**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JASMINE D. BUNTON, BY HER LEGAL ) GUARDIAN, LOURENCO P. ) DOSSANTOS, and LOURENCO P. ) DOSSANTOS, ) )     PLAINTIFFS, ) ) v. ) ) SEARS ROEBUCK AND CO., and ) WHIRLPOOL CORPORATION, ) )     DEFENDANTS. ) ) | CIVIL ACTION NO.: 04-CV-12369-NG |

**MEMORANDUM IN SUPPORT OF PLAINTIFF JASMINE BUNTON'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. Introduction

Plaintiff instituted this action to recover for injuries and potential lost earnings she suffered

when her hand was maimed by an ice dispenser designed and manufactured by defendant

Whirlpool Corporation ("Whirlpool") and sold and marketed under its own brand name by

defendant Sears Roebuck and Co. ("Sears") under its own brand name. The basis for plaintiff's

motion for summary judgment on the issue of defendant's liability lies in the comprehensiveness

of plaintiff's evidence and defendants' inability to assert adequate defenses with respect to

material facts.

The depositions, pleadings and evidence show that there is no genuine question of fact left

with regard to defendants' liability. Plaintiff is therefore entitled to judgment as a matter of law

and hereby moves for partial summary judgment, on the issue of liability of the defendants.

## II. Facts

The facts are simple and largely uncontested. On or about June 29, 2003 the

Dossantos/Bunton family purchased a new refrigerator, model "Kenmore", from a Sears store in

1

Braintree, Massachusetts. This refrigerator was, as plaintiff was informed during this litigation, designed and manufactured by defendant Whirlpool. The refrigerator was delivered and installed by Sears at the residence of plaintiff Jasmine Bunton.[1]

This refrigerator is equipped with an integrated icemaker in the door of the freezer compartment. In order to retrieve either ice cubes or crushed ice, one has to push the lever installed in the door of the unit, preferably with a glass or mug, and ice will fall through an approximately 9" long chute and into the glass / mug.

On or about April 16, 2004, plaintiff Jasmine Bunton, then not yet nine years old, tried to retrieve crushed ice from the ice maker in the door of the freezer compartment of the refrigerator. Although Jasmine pushed the ice maker's lever with a glass, no ice would fall through the chute. Jasmine then reached up into the icemaker with her left hand, in an attempt to free up the jammed ice cubes. With her hand placed in the ice dispenser chute, her forearm and elbow activated the internal mechanism and the ice dispenser blades, located about 9" above the chute exit, severely lacerated her left hand. Jasmine was able to push the "lock" button on the display panel which stopped further movement of the blades. See Bunton Deposition P. 35:3-10.

Alerted by Jasmine's screams, her grandmother called 911 and notified the police. The police and the fire department responded to her call for help. The rescue team had to dissemble the refrigerator and cut it open in order to free Jasmine. The exertion took about 2 ½ hours. During this time, Jasmine remained trapped in agony, with metal blades locked into her hand.

Jasmine was taken to the emergency room where sutures were applied to the lacerations. She was ultimately sent to a hand specialist at New England Medical Center who diagnosed severe damage to the digital nerve. Additional surgery was recommended and performed on 5/7/04. A 7 cm segment of her sural nerve was removed from her left ankle and grafted into her

---

[1]  The water was not hooked up to produce ice. Wihtout knowledge of any adult, the Bunton/Dossantos kids made ice and put same into the dispenser to discharge ice automatically when desired.

2

injured hand. Additional nerve repair and muscle repairs were attempted in the same surgery. A third surgical procedure was performed on October 18, 2004 in an attempt to remove scar tissue. Additional surgery was recommended by defendants' medical expert.

Both plaintiffs' and defendants' medical experts agree that Jasmine will probably never fully recover normal sensation and functionality in her injured hand and will remain permanently impaired. See Expert Reports of Dr. Graf (for plaintiff) Dr. Nalebuff (for defendant), filed with this Court. There is disagreement only as to the extent of the impairment which is immaterial for purposes of this motion.

## III.    Argument

### A.    Standard on Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers and interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. See Fed.R.Civ.P. 56(c). The court will review all facts in the light most favorable to the non-moving parties. Woods v. Friction Materials Inc., 30 D 3rd 255, 259 (1st Cir. 1994); Wasylow v. Glock, Inc., 975 F.Supp. 370, 376 (D. Mass. 1996).

In the litigation at hand, there can be no question as to the liability of defendants, even if all facts are viewed in the most favorable light to them.

### B.    Causes of Action – Breach of Warranty (Defective Design and Failure to Warn)

Plaintiff is entitled to recover on the grounds of breach of implied warranty of merchantability based on the defective design of the refrigerator and failure to warn. This motion will focus on the causes of action based on strict liability only, as for those, the negligent behavior of the defendants need not be proven. Wasylow v. Glock, Inc., 975 F.Supp. 370, 376 (D. Mass. 1996). The manufacturer warrants that its product is fit for its ordinary purpose, which

3

includes both the uses which the manufacturer intended and those uses and misuses which are reasonably foreseeable. Back v. Wickes Corp., 375 Mass. 633, 640, 378 N.E.2d 964 (1978). It is sufficient that plaintiff shows that the product itself was defective (dangerous) or not supplied with sufficient warning, as warranty liability focuses on the product itself and not on the conduct of the user or the seller. Defendant's misconduct is not required and need not be shown for warranty liability. Correia v. Firestone Tire & Rubber Co., 388 Mass. 342, 446 N.E.2s 1033 (1983); Colter v. Barber-Greene Company et al., 403 Mass. 50, 525 N.E.2d 1305.

It is well established that, although Massachusetts does not formally recognize strict liability in product liability cases, Massachusetts warranty law is practically identical in all important aspects with strict liability as outlined in the Restatement (2nd) of Torts, § 402A. In other words, although not recognized by name, "[a] Massachusetts product liability claim for breach of warranty of merchantability is basically the same as strict liability in tort under Massachusetts law." Wasylow v. Glock, *supra*, quoting Hayes v. Douglas Dynamics, 8 F.3 88, 89 (1st Cir. 1993); Back v. Wickes Corp., 375 Mass. 633, 640, 378 N.E.2d 964 (1978), Colter v. Barber-Greene Company et al., 403 Mass. 50, 525 N.E.2d 1305, 1313. Therefore, a breach of warranty can occur, regardless of negligence on the defendants' side, either, if the product is defectively designed, or foreseeable users were not adequately warned. Wasylow v. Glock, Inc., 975 F.Supp. 370, 377 (D. Mass. 1996), Kearny v. Philip Morris, Inc., 916 F.Supp. 61, 64 (D.Mass.1996), Colter v. Barber-Greene Company et al., 403 Mass. 50, 525 N.E.2d 1305.

1. Recovery under breach of warranty – defective design

In order to prevail on a breach of warranty claim, plaintiff must show: 1) that defendant manufactured and sold the product;[2] 2) that the plaintiff was, at the time of the injury, a person whom the manufacturer might reasonably have expected to use or be affected by that product in a

---

[2] Smith v. Ariens Co., 375 Mass. 620, 623 (1978) (plaintiff who sues a particular manufacturer generally must be able to prove that the item which allegedly caused the injury can be traced to that specific manufacturer).

manner that the defendant intended or reasonably could have foreseen;[3] 3) that a defective condition rendering the product unreasonably dangerous existed at the time the product left defendants' hand so that the product was not reasonably suitable for the ordinary uses which goods of that kind were sold;[4] 4) that the defective condition was a cause of plaintiff's injury.[5]

    a) <u>Defendants manufactured and sold the product</u>

In its answer to plaintiff's amended complaint, Whirlpool admits that it designed and manufactured the Kenmore refrigerator sold to Maria Dossantos. <u>See</u> Whirlpool Answer at Para. 7. Whirlpool further admits that Sears sold the refrigerator to Maria Dossantos. <u>See</u> Whirlpool Answer at Para. 5. Sears admits in its answer that it sold the refrigerator to Maria Dossantos. <u>See</u> Sears Answer at Para. 5. The refrigerator sold to Maria Dossantos is the one involved in causing the injury to Jasmine Bunton. <u>See</u> Bunton Deposition at P. 26:5-10.

    b) <u>Plaintiff is a foreseeable user, using the product in a reasonably foreseeable manner</u>

The manufacturer must anticipate the environment in which the product will be used and must design against reasonably foreseeable risks attending the products used in that setting. Only unforeseeable misuses are excluded from liability <u>Simmons v. Monarch Mach. Tool Co., Inc.</u>, 596 N.E.2d 318 (1992); <u>Bernier v. Boston Edison Co.</u>, 403 N.E.2d 391; <u>Back v. Wickes Corp.</u>, 375 Mass. 633, 640, 378 N.E.2d 964 (1978).

In the case at bar, the refrigerator was used in a family's kitchen - which is unquestionably an environment in which the product will be used. Also, it is foreseeable that underage children would have had access to a kitchen and the refrigerator. Therefore, defendants should have designed against reasonably foreseeable risks arising out of the use of the icemaker / refrigerator by children.

---

[3] <u>Allen v. Chance Mfg. Co.</u>, 398 Mass. 32, 34 (1986).
[4] M.G.L. c. 106, sec. 2-314(c) and <u>Cocco v. Deluxe Sys., Inc.</u>, 25 Mass.App.Ct. 151, 153-54 (1987).
[5] <u>Fernandes v. Union Bookbinding Co., Inc.</u>, 400 Mass. 27, 37 (1987).

Defendant's own expert, Stephen G. Boughton, concedes in deposition that a nine year old child is a foreseeable user:

> Q: "This subject model refrigerator as designed and introduced into the market, is it intended for the use by a nine-year-old child"?
> A: "There is no restriction that I know of as far as the age is concerned".
> Q: Is it foreseeable that a nine-year-old child would be using the water dispenser or the ice dispenser?"
> A: "I think this is foreseeable".

See Boughton Depo. P. 47:8-16.

Therefore, defendants should have designed against reasonably foreseeable risks arising out of the use of the icemaker / refrigerator by children. Defendants concede that plaintiff's attempt to dislodge the ice was a foreseeable use. It is further conceded by defendant Whirlpool that it is foreseeable that a child – or an adult – would, in the event of an ice jam, try to free this jam by reaching into the chute with their hand. Defendant Whirlpool's 30(b)(6) designee, who is also its designated expert, admitted in his deposition on June 17, 2005 that:

> Q.: "From Whirlpool's design standpoint, is it conceivable that there will be an ice jam or an ice damn which would prevent the flow of ice into someone's glass when they are attempting to use the dispenser?"
> A: "Yes".

See Boughton Depo. P. 40:19-24.

The expert conceded further that plaintiff's attempt to remove ice was a foreseeable use:

> Q: "So in Whirlpool's design process did it ever consider that an ice jam or ice damn would occur and an individual would try to free that jam by sticking their hand up the ice chute?"
> A: "Well, that is certainly one way that you could do it".
> Q: "Right. And in the safety audits which you were involved in was it ever considered that someone would actually do it, would actually put their hand up the ice chute to try to free an ice jam?"
> A: "I would not consider that to be a safety hazard"

6

*Q: "Could you elaborate on that; why you do not believe that to be a safety hazard?"*
*A: "Well, when I clear an ice jam like that in my refrigerator, I reach up and I*
   *dislodge the ice cubes and they fall out".*

See Boughton Depo. P. 41:6-23.

*Q: "How would you expect a user to free an ice jam or an ice damn?"*
*A: "I would expect people to do what I do."*
*Q: "What do you do?"*
*A: "What I described earlier"*
*Q: "You put your hand up there?"*
*A: "If I can reach where the ice was jammed from underneath, I would make an*
*attempt to dislodge the ice".*

See Boughton Depo. P. 53:18-24.

c) <u>Defective condition, unreasonably dangerous</u>

A defective condition is one that makes the product unreasonably dangerous as a result of

the product's design so that the product is not "fit" for ordinary usage. <u>Colter v. Barber-Greene</u>

<u>Company et al.</u>, 403 Mass. 50, 525 N.E.2d 1305, <u>Wasylow v. Glock, Inc.</u>, 975 F.Supp. 370, 379

(D. Mass. 1996), or, by contrast, a product is "reasonably fit" if the design avoids the "reasonably

foreseeable risks attending the products use." <u>Back v. Wickes Corp.</u>, 375 Mass. 633, 640-641,

378 N.E.2d 964 (1978). As set forth *supra*, plaintiff used the refrigerator in a foreseeable

manner, per Whirlpool, by putting her hand up the dispenser to dislodge ice. Per se, the ice

dispenser is not "fit" for this purpose if one can become seriously injured by simply reaching into

the chute to dislodge ice. The hidden blades and resulting injury establish the unreasonably

dangerous nature of the crusher/dispenser.[6] Plaintiff suffered a crippling injury, that could have

been far worse had she not acted quickly by locking the moving blades, preventing decapitation

of her fingers.

---

[6] See <u>Vautour v. Body Masters Sports Industries, Inc.</u>, 147 N.H. 150, 784 A.2d 1178 (2001) (product was
dangerous to an extent beyond what would be contemplated by the ordinary customer, with the ordinary knowledge
common to the community as to its characteristics).

Also in design defect cases, the plaintiff has to show the existence of a safer, alternative design that is equally functional and economically feasible and could have reduced or avoided the harm posed by the product. Collins v. Ex-Cell-O. Corp., 629 F.Supp. 540, 543 (D.Mass.1986) affirmed 815 F.2nd 691 (1st Circuit 1987); Kotler v. American Tabacco Co., 926 F.2nd, 1217 (D. Mass. 1990); Restatement (Third) of Torts: Product liability § 2a (1998).

Defendant Whirlpool's 30(b)(6) designee, later designated as its expert, conceded during his deposition that safer, equally economical and functional design alternatives exist and have been used by defendant. He stated in his deposition on June 17, 2005 that a previous Whirlpool refrigerator utilized an ice crusher located in the freezer compartment and not in the door – a much greater distance from children's hands. See Boughton Depo. P. 58:6-24. This model had the same functionality but due to the ice maker being outside of the range of human limbs (in the upper freezer compartment) it would have been impossible for a child, such as Jasmine Bunton, to reach into the cutting tools of the ice crusher through the chute. See Boughton Depo. P. 58:6-24.

Whirlpool's 30(b)(6) designee, Mr. Boughton, also stated in his deposition that a coded lock is utilized on other Whirlpool designs, that would have made it impossible, without knowing the code, for a child to operate a "locked" ice/water dispenser. See Boughton Depo. P. 51:2-9.

Other design alternatives include the installation of a barrier guard or the composition of such geometry that entry up to the point of cutting, by a child's hand, would have been physically impossible. All of these alternatives would have prevented plaintiff's accident and would have been perfectly feasible. See Dr. Richman Expert Report, P. 5.

d) Causation

Jasmine Bunton stated in her deposition as follows:

*Q. Why did you stick your hand up there?*

8

*A. Because I was trying to get the ice down because it wouldn't come down. My hand just pushed against it.*
*Q. And then it cut your finger?*
*A. Yes.*

See Bunton Deposition at P. 26:5-10.

e)  The defenses raised in defendants' expert report are not material to the proof required to prevail on summary judgment

In his one-page report, defendant's expert, Stephen G. Boughton, claims that the ice

dispenser was tested appropriately and that all internal safety procedures and standards by

Whirlpool were met.  See Boughton Expert Report dated September 30, 2005, Exhibit 1 hereto.

The statements of Mr. Boughton are conclusory and not relevant to the proof required of plaintiff.

Plaintiff does not dispute that some tests were performed by Whirlpool, or that those tests are the

usual tests run by a manufacturer/designer of refrigerators.  These conclusory statements are

irrelevant.  The product Whirlpool produced and delivered to market is dangerous and defective

because it severely injured a child in the normal and foreseeable use of same.  Whether or not

sufficient or inadequate testing was performed is not a factor as to whether or not Whirlpool is

liable for a resulting defective condition.

Mr. Boughton's statements, whether or not they are true, might be valid defenses against

causes of action based on negligence but are *per se* irrelevant in a Breach of Warranty action

under Massachusetts law.  It is sufficient that plaintiff show that the product itself was defective

(dangerous) or not supplied with sufficient warning.  Warranty liability focuses on the product

itself and not on the conduct of the user or the seller.  Defendant's misconduct is not required and

does not need to be established to recover under a warranty theory.  See Correia  v. Firestone Tire

& Rubber Co., 388 Mass. 342, 446 N.E.2d 1033 (1983);  Colter v. Barber-Greene Company et

al., 403 Mass. 50, 525 N.E.2d 1305.

2.  Recovery under breach of warranty – failure to warn

A failure to give foreseeable users adequate warning constitutes an additional breach of warranty. Kearny v. Philip Morris, Inc. 916 F.Supp. 61, 64 (D.Mass.1996); Wasylow v. Glock, Inc., 975 F.Supp. 370, 377 (D. Mass. 1996). Liability for failure to warn may be imposed even if there is no negligent design or manufacture. Lapeeri v. Sears, Roebuck & Co., 787 F.2d 726, 729 (1st Circuit 1986). The warnings must be comprehensible and in its forcefulness, "commensurate with the danger involved."

As conceded by defendants in deposition on June 28, 2005, there was no warning, cautioning the users of the ice maker about the dangers of pushing up their fingers or hands up the ice chute, neither in the owner's manual ("Use and Care Guide") nor attached to the refrigerator. It should be emphasized that in this case, defendants did not give an inadequate warning, but failed to give any warning with regard to the dangers of the ice dispenser.

Therefore, there is no material fact in dispute whether existing warnings were adequate – because none at all were given.[7]

As shown above and conceded by defendants, plaintiff was also a foreseeable user of the icemaker and a kitchen is a foreseeable environment for a refrigerator. Had the defendants utilized appropriate warnings, in the form of a sign posted on the refrigerator or at least advised users in the user manual about the dangers of the icemaker, the accident may have been avoided.

**IV.    Conclusion**

It can be concluded that defendants' product was unreasonably dangerous because a foreseeable user was injured in performing a foreseeable task – clearing an ice damn. Alternative designs were utilized in the past (crusher in top ice shelf) and available on other refrigerators (a

---

[7] The only warning closely relevant to the issue at hand is that contained in the owner's manual advising users to use a sturdy glass, so that in retrieving ice it does not break causing a cut the hand.

code for the lock mechanism) that would have prevented this injury. Further, a safer product could have been produced by utilizing a delivery chute that dimensionally could not be accessed by a child's hand.[8]

It can be further noted that defendants failed to provide <u>any</u> warnings to foreseeable users of the product concerning the dangerous nature of the ice crusher.

Thus, after viewing all the facts in the most favorable light to defendants, there can be no doubt regarding the liability of defendants. Plaintiff is therefore entitled to judgment as a matter of law.

                        Plaintiffs,
                        By their attorneys,


                        _____
                        Andrew J. Tine (BBO#633639)
                        Haese, LLC
                        30 Federal Street
                        Boston, MA 02110
                        (617) 428-0266 – Telephone
                        (617) 428-0276 – Fax
                        atine@haese.com

---

[8] Plaintiffs' believe that an expert opinion on this design alternative is not required because a lay person jurer may easily understand and conceptualize how a smaller width or greater length of delivery chute would make it physically impossible for a child to reach the ice crusher.



Refrigeration Technology

EVANSVILLE, INDIANA 47727 • AREA CODE (812) 426-4000
WRITER'S DIRECT NUMBER (812) 426-4003
FAX (812) 426-4029

September 30, 2005

# REPORT OF
# STEPHEN G. BOUGHTON

**JASMINE BUNTON**
**04-NA-ADC-28072**

EXHIBIT "___1___"
PAGE___1___ OF___2___

**ASSIGNMENT:**

Analyze the design of the refrigerator that is the subject of this lawsuit, model number 106.53634300, serial number sp2535956.

**OBSERVATIONS AND CONCLUSIONS:**

1.  I have examined the design of the model refrigerator and am familiar with the design of the ice delivery system. I am also involved in the safety audit process for refrigeration products.
2.  The ice delivery system used in this refrigerator design was tested according to the UL testing protocol and passed all UL testing procedures. The refrigerator was approved and is listed by UL as passing safety testing requirements.
3.  The design of this refrigerator meets all internal Whirlpool product safety requirements, including access to moving parts.
4.  The safety audit and hazard analysis process failed to reveal any incident similar to the Bunton incident, and therefore this incident and injury was not reasonably foreseeable by Whirlpool Corporation.


Stephen G. Boughton
September 30, 2005

EXHIBIT "_____"
PAGE __2__ OF __2__