# Marc H. Richman, Inc.

*Consulting Engineers - Forensic Engineers - Metallurgists/Materials Engineers*

One Richmond Square
Suite 107C
Providence, Rhode Island 02906
Telephone: 401-751-9656
Facsimilie: 401-751-9210
mhrichman@aol.com
www.marchrichmanengineering.com

27 June 2005

Andrew J. Tine, Esq.
Haese, LLC
30 Federal Street, 3rd Floor
Boston, MA 02110-2508

In re: **Dossantos and Bunton v Sears**

Ref: 4995

Dear Mr. Tine:

In response to your request, I have investigated the injuries to Jasmine D. Bunton and have examined the refrigerator/freezer associated with those injuries. Due to the delay in production of detailed dimensional drawings of the parts and components of the ice maker/crusher/dispensar as well as factory replacement parts for the instant refrigerator/freezer, a preliminary report dated 30 June 2005 was issued. Since then, Sears has installed factory replacement parts so that the refrigerator/freezer is in essentially the same condition in which it was at the time of the incident. No detailed dimensional drawings have yet been produced by Sears or Whirlpool. My investigation cannot be completed at this time without those detailed dimensional drawings, but I was able to inspect and examine the refrigerator/freezer with the replacement parts installed. The following report, therefore, may be subject to change based upon my review of those detailed dimensional drawings at a subsequent date, but it does represent my report of this investigation as well as my conclusions and opinions in this matter as of this date.

## 1. Introduction:

The following report is based upon my inspection of the instant refrigerator/freezer on 31 March 2005 and again on 19 July 2005, my discussions with Jasmine D. Bunton and Laurenco P. Dossantos, my review of the deposition transcripts of Jasmine D. Bunton, Laurenco P. Dossantos and Stephen G. Boughton, and my review of discovery materials Bates 1-388. It is also based upon my experience of 36 years as a Professor of Engineering at Brown University, Providence, RI and over 48 years as a Forensic Engineer in private practice.

## 2. Background:

The refrigerator/freezer in the Bunton/Dossantos apartment on 16 April 2004 had been purchased from Sears and had been manufactured by Whirlpool. It came with provision for



**EXHIBIT A**

hooking up a water line to the freezer for the icemaker and through the door dispenser of ice (crushed or cubed) and ice water. Mr. Dossantos had decided that he would not have the water line hooked up, but would simply put plastic ice trays into the freezer and make ice cubes manually. He was not aware that the ice crusher was being used by anyone.

According to Jasmine D. Bunton, she put ice cubes made in the individual trays into the hopper on the inside of the door of the freezer. She would then utilize the controls on the outside of the door to deliver ice cubes or crushed ice to a glass.

On 16 April 2004, Jasmine D. Bunton put a glass against the ice dispenser on the exterior of the freezer door and pressed the control for crushed ice. She saw several ice cubes fall into the glass (not crushed ice) and then nothing further. She used her fingers and hand to reach in through the delivery chute to free what she surmised was an ice cube jam. As she was doing this, her arm pressed against the dispenser lever. That activated the ice crusher mechanism while her hand and fingers were still inside the unit.

When she felt something cut into her, she pressed the lock control and the knives stopped moving. She tried to pull her hand out, but was unable to do so. She called for help from her grandmother, and a cousin called 911. The Boston Fire Department managed to take apart the ice crusher mechanism on the inside of the door and free up Jasmine's hand. She was then taken to the hospital for emergency treatment.

Subsequent to that, the ice crusher/hopper was not replaced until recently when a Sears technician delivered and installed the replacement parts which restored the refrigerator/freezer to its original configuration. The water line was still not hooked up to provide automatic ice making.

## 3. Investigation

On 31 March 2005, I met with you at the residence of Jasmine Bunton and Laurenco Dossantos and inspected the instant refrigerator/freezer.

Those parts which had been removed or broken during the rescue attempt had not been replaced.

I also spoke with Jasmine Bunton and Laurenco Dossantos.

The refrigerator/freezer is shown in the photograph presented in Fig. 1. It is a side-by-side refrigerator/freezer equipped with ice (cube or crush) and ice water dispensers on the exterior of the freezer door.

The manufacturer's identification label is shown in Fig. 2. The model number for this Kenmore Coldspot is listed as 106.53634300 and the serial number as SP2535958. This label also indicates that the unit has the Underwriters Laboratory seal.

The ice and ice water dispensers are shown in Fig. 3. The dispenser for the ice is at the left and for the ice water at the right. These are the types of dispensers where a glass is pushed against the grey pad to activate delivery of the desired product. The form of the ice -- cube or crushed -- is controlled by the pad above the dispensers. These controls are shown in closer detail in Fig. 4. At the left is a LOCK/UNLOCK for the dispenser. The LOCK prevents



**EXHIBIT A**

In re: **Dossantos and Bunton v Sears** – 27 July 2005 – Page 3 -

the dispensers from delivering product until the UNLOCK is depressed.  It only requires pressure to go from LOCK to UNLOCK and no parental code is necessary.

The center two controls are for the crushed ice (to the left) and for the ice cubes (to the right).  If the crush is selected, the ice crusher in the door will turn on and crush the ice cubes in the hopper until sufficient product has been delivered and pressure is removed from the grey dispenser pad.

At the right are the two controls for a light at this dispenser location.  The left control shuts off the light and the right one turns it on.

The ice in cube or crushed form is delivered through a clear plastic delivery chute of 2-1/2 inch inside diameter.  There is a flap at the top end of the delivery chute.  This flap closes the opening into the freezer.  In the photograph in Fig. 5, my finger is pushing that flap into the freezer compartment.  The flap in the closed position is shown in Fig. 6.

On the inside of the freezer door (Fig. 7) there is an opening of almost rectangular form and a steel collar and gear which engages the ice crusher and hopper (not present on 31 March 2005).  The opening is approximately 4-1/2 inches across and 2-3/4 inches wide as can be seen from the 6-inch ruler placed across the opening in Figs. 8 & 9.

Jasmine is shown standing in front of the refrigerator/freezer with her left hand just below the ice delivery chute in Fig. 10.  The size of her hand relative to the diameter of the plastic chute can be seen in Fig. 11.

On my inspection of 19 July 2005, the ice hopper and crusher had already been installed by a Sears technician.  This can be seen in Figs. 12 & 13.  This is called the spacesaver ice storage system (see Fig. 14) and can be removed from the door by depressing the blue button on the right side.  The underside of the ice crusher is shown in Fig. 15.  The crushing knives are visible in the center of this photograph and in the closer view in Fig. 16.

With the ice crusher and hopper removed, the flap at the foot of the delivery chute inside the freezer door is shown in Fig. 17 and in closer view in Fig. 18.  This flap opens inwards when the grey pad dispenser is pushed by a glass.  The diagonal distance from the rim of the rectangular opening to the inside of the flap is 6-3/4 inches and the distance from the corresponding point on the underside of the crusher unit to the lowest knife is 1-1/2 inches.  This makes the distance from the flap to the knife as 8-1/4 inches.

There is no warning on the exterior of the freezer door cautioning users about the danger of pushing their fingers or hands up the delivery chute.  There is no parental code to prevent youngsters from being allowed to push buttons and activate the ice crusher while they have their hand and fingers up the delivery chute.  The only warning contained in the owner's manual is to be careful that a sturdy glass is used so that it does not break when pressing it against the grey dispenser pad and when the ice cubes are falling into that glass.

## 4. Analysis

According to the deposition testimony of Mr. Boughton and the safety audits performed by Whirlpool, a UL articulated probe was used to determine that the point of operation of the ice crusher blades was protected by location, i.e. the probe could not be inserted far enough into



**EXHIBIT A**

In re: **Dossantos and Bunton v Sears** – 27 July 2005 – Page 4 -

the delivery chute for the finger to reach the blades.  It was also testified by Mr. Boughton that this was the only probe used by Whirlpool.

The articulated UL probe simulates an anthropomorphic adult hand and fingers.  It is shown in the photograph from the web site of Ergonomics, Inc. in Appendix A.  The dimensions of this probe taken from an Underwriters Laboratory Product Safety Newsletter is included in Appendix A as is the calibration of an actual articulated finger probe.

The hand dimensions of this UL articulated accessibility probe would prevent that part of the probe from penetrating far enough up the 2-1/2 inch ID chute to allow the finger to reach the rotating knife.

This test probe does not represent a child's fingers, hand, wrist, etc.  There are jointed children's finger probes JFP32 (see Appendix B) sold by Ergonomics, Inc. which come in two different sizes – one for simulation of 0 – 36 month old children and the other for 3 to 14 year old children.  These are used to test for accessibility by children into dangerous points of operation.  These finger probes are manufactured in accordance with IEC 61032 Figs. 12 and 13 which list the dimensions of these probes.  These dimensions as well as a calibration for a set of children's finger probes are included in Appendix B.  These test probes are also cited in U.S. Federal Regulations, Title 16, Volume 2, Chapter 11, Part 1500 for consumer products.

The children's finger probes have diameters of the hand/wrist which would allow penetration into the 2-1/2 inch ID delivery tube, past the flap, and up to the location of the rotating knives of the crusher mechanism.

There is no question that Jasmine was able to insert her hand and fingers sufficiently far into the chute that she contacted the rotating knives.  Had Whirlpool performed a safety audit using the children's finger probes, this danger would have been discovered and corrective action taken  - a design change, appropriate and adequate warnings and instructions, and a parental lock code to preclude unauthorized youngsters from being able to turn on the ice crusher mechanism.

Without the detailed dimensional drawings which have not yet been produced by defendants, it can be stated at this time that it would only take an 8-1/4 inch penetration through the 2-1/2 inch diameter ID chute to reach the rotating knives.  This distance would be more properly calculated based on detailed dimensional drawings that have not yet been produced.

The injury to Jasmine Bunton would not have occurred unless the refrigerator/freezer were so designed and/or manufactured to allow her fingers to penetrate into the ice dispenser from outside the door sufficiently far as to reach the point of operation of the ice crusher without any interlock shutting off the moving parts of the ice crusher or without a guard blocking her access to that point of operation.

The refrigerator/freezer should have been designed so that the small fingers of a child of this age could not reach in from the outside and encounter the moving parts of the ice crusher mechanism.

There should have been a guard to block access from the outside and/or an interlock switch to deactivate the moving parts of the ice crusher mechanism in the event that a child tried to reach in from the outside.  Barrier guards of various types have been stipulated by ANSI and ASME for protecting people from moving parts at points of operation.  The dimensions of the



**EXHIBIT A**

necessary barrier guards are dependant on the dimensions of the opening and the distance from the throat of that opening to the point of operation.

While it would be difficult to design a barrier guard or interlock capable of distinguishing between the presence of ice in the chute and a child's hand, the chute could have been made of such geometry that entry up to the point of operation by a child would have been precluded. This could have taken the form of a tortuous chute path, a greater distance to the point of danger, or other similar design changes.

Furthermore, there should have been an emergency button on the ice dispenser panel that would have cut out the functioning of any of the controls on that panel especially the ice crushing controls. Jasmine immediately hit the LOCK button when she felt something had caught or cut her hand. That stopped the blades. An emergency (E-STOP) button would do the same thing, but it would prevent any other control from working until the entire panel were reset. In Jasmine's case, had anyone hit the UNLOCK accidentally while she was caught and her arm was depressing the grey dispenser pad, the knives would have begun to rotate again. This could not happen if there had been an E-STOP.

It is foreseeable that youngsters will use the ice and ice water dispensers on a refrigerator/freezer of this type. Parents should be able to prevent use of these dispensers by having a parental code which would LOCK the ice delivery and ice water delivery until an adult inserted the proper coding to UNLOCK these functions. This would have rendered the ice dispenser more child resistant.

The manual for the refrigerator/freezer should have warned of the danger of using one's fingers to clear a blockage in the ice dispenser and done so with the necessary warning and danger symbols in the manual or by the use of video tape or DVD to illustrate to the purchasers how to use the refrigerator/freezer safely and without risk.   It should also have included warnings to parents to instruct them in how to prevent unauthorized use of these functions by youngsters.

The manual does not detail or explain to anyone that with no water line hookup and with no automatic ice maker, the hopper and ice crusher can still be filled with manually frozen ice cubes and the ice crusher and dispenser utilized. A parent who has not hooked up the water line and uses ice cube trays would be unaware, as Mr. Dossantos had been, that individual cubes of ice could be placed in the hopper and that the crushing of ice could still occur with this unit.

## 5. Opinions

Based upon the above-described preliminary investigation, the following are my opinions in this matter:

The instant refrigerator/freezer was defective in its design and/or manufacture and was unfit for its intended purpose in that there was access to the moving parts of the ice crusher mechanism from the exterior of the freezer door by a youngster's fingers and that this point of operation was not guarded by location with respect to children.

The instant refrigerator/freezer was defective in its design and/or manufacture and was unfit for its intended purpose in that the manual did not adequately warn by text, schematics, decals or videos that the ice crusher could be used even though the water line and automatic



**EXHIBIT A**

In re: <u>Dossantos and Bunton v Sears</u> – 27 July 2005 – Page 6 -

ice maker were not hooked up and did not adequately warn by text, schematics, decals or videos of the dangers to be encountered by someone (especially a youngster) trying to clear a jam with their fingers from the outside.

It is further my opinion that there should have been an emergency stop button on the door panel as described supra.

It is also my opinion that a parental lock out code should have been available to preclude use of the ice crusher function by unauthorized youngsters.

It is, therefore, my opinion to a reasonable degree of Engineering certainty that the proximate cause of the injuries to Jasmine Bunton was the defective design of the refrigerator/freezer, the inadequate warnings and instructions on the freezer and in the manual, and the lack of a parental lock out code and that these defects rendered the instant refrigerator/freezer model unreasonably dangerous and unfit for its intended purpose.

Sincerely,

Marc H. Richman, Sc.D., P.E.

Marc H. Richman, Sc.D., P.E.
President

MHR/cp
Datawp\Dossantos Report.doc

**EXHIBIT A**



Fig. 1  Refrigerator/Freezer.

**EXHIBIT A**

In re: Dossantos and Bunton v Sears — 27 July 2005 – Page 8 -



Fig 2  Manufacturer's identification label.



Fig 3  Ice and ice water dispenser.

EXHIBIT A

In re: <u>Dossantos and Bunton v Sears</u> – 27 July 2005 – Page 9 -



Fig. 4  Dispenser control panel.



Fig. 5  Discharge chute and flap.

**EXHIBIT A**

In re: <u>**Dossantos and Bunton v Sears**</u> – 27 July 2005 – Page 10 -



Fig. 6 Looking up discharge chute to closed flap.



**EXHIBIT A**



Fig. 8 Six inch ruler across chute opening.



Fig. 9 Six inch ruler across chute opening in orthogonal direction./

**EXHIBIT A**

In re: **Dossantos and Bunton v Sears** – 27 July 2005 – Page 12 –



Fig. 10  Jasmine standing at ice dispenser.

**EXHIBIT A**

In re: <u>**Dossantos and Bunton v Sears**</u> – 27 July 2005 – Page 13 -



Fig. 11 Closer view of Jasmine's hand and fingers at dispenser.

**EXHIBIT A**



Fig.  11  Ice caddie and crusher mechanism in place on inside of door.

EXHIBIT A

In re: **Dossantos and Bunton v Sears** – 27 July 2005 – Page 15 –



Fig. 12  Ice hopper and crusher mechanism in place on inside of freezer door.

**EXHIBIT A**

In re: <u>Dossantos and Bunton v Sears</u> – 27 July 2005 – Page 16 -



Fig. 13  Release button for ice caddie.



Fig. 14  Underside of crusher and ice caddie.

**EXHIBIT A**

In re: **Dossantos and Bunton v Sears** – 27 July 2005 – Page 17 –



Fig. 15  Crushing knives.



Fig. 16  Inner surface of flap as seen from inside freezer door.

**EXHIBIT A**

In re: **Dossantos and Bunton v Sears** – 27 July 2005 – Page 18 -



Fig. 17  Closer view of inside of flap.

**EXHIBIT A**

# Appendix A

# UL Articulated Finger Probe

**EXHIBIT A**

**ERGONOMICS,INC.**

HOME

OUR COMPANY

SERVICES

EMC TEST EQUIPMENT

PRODUCT SAFETY TEST EQUIPMENT

NEWS & EVENTS

PUBLICATIONS

CONTACT US

OUR CUSTOMERS

## Select a Product:

Category

### GET A QUOTE!

**Ergonomics Inc.**
PO Box 964
Southampton, PA 18966
800-862-0102
215-357-5124
Fax: 215-364-7582
info@ergonomicsusa.com

# Ergonomics Inc.

## UL Articulated Finger Probe -- ULP01



This probe is a standard articulated finger as required by Underwriters Laboratories in many of their standards.

### Contact us for a quote!

◀ Back

| Access Probes | Finger Probes | Impact Testers | UL Probes & Testers |

© Ergonomics Inc. - all rights reserved

**EXHIBIT A**

Figure 2 shows the dimensions of the
UL Articulated Accessibility Probe



ALL DIMENSIONS IN MILLIMETERS

The probe is to be used only as a gauge and inserted with minimal force. The probe shall be rotated with the movable sections straight or in any possible position resulting from bending one or more sections in the same direction.

EXHIBIT A

# Ergonomics Inc.

P.O. Box 964 • Southampton, PA 18966
Phone: 215-357-5124
Fax: 215-364-7582
E-mail: info@ergonomicsusa.com

**Calibration Laboratory**

Visit our WEB page: http://www.ergonomicsusa.com
ULP01  Rev G

## Certificate of Calibration
### Accessibility Measurement Gauge

This is to certify that the following instrument has been calibrated to applicable Underwriters Laboratories Inc. specifications.

Manufacturer:   Underwriters Laboratory, Inc.
Instrument model No: ULP01          Serial Number:  86
Description:   UL Jointed finger probe

Approved by: _David L George_          Date of issue:  12 June 2003

Next recommended calibration: 12 December 2004
                 Certificate Number:  F2200

All instruments are calibrated using procedures and instruments traceable to the National Institute of Standards and Technology.  Traceable number is 821/258488.  Uncertainties of measurements are ±0.003mm for measurements up to 50mm and 0.01 above 50mm, ±3 min. for angles.

### Calibration Data

| Dimension Nominal Value – mm | Measured Value as Received – mm | Measured Value After - mm | Required Minimum Value – mm | Required Maximum Value - mm | Pass/Fail |
|---|---|---|---|---|---|
| 3.5 radius | | 3.56 | 3.40 | 3.60 | P |
| 30 degrees | | 30 deg. 0 min. | 29.00 | 31.00 | P |
| 5.0 | | 4.98 | 4.87 | 5.13 | P |
| 5.8 | | 5.829 | 5.67 | 5.93 | P |
| 30.0 | | 30.00 | 29.70 | 30.30 | P |
| 60.0 | | 60.48 | 59.50 | 60.50 | P |
| 15 | | 14.889 | 14.80 | 15.20 | P |
| 96.0 | | 95.87 | 95.50 | 96.50 | P |
| 19.0 | | 18.93 | 18.80 | 19.20 | P |
| 100.0 | | 100.02 | 99.50 | 100.50 | P |
| 21.5 | | 21.595 | 21.30 | 21.70 | P |
| 25.4 | | 25.36 | 25.20 | 25.60 | P |
| 78.0 | | 77.80 | 77.20 | 78.80 | P |
| 16.0 | | 15.893 | 15.80 | 16.20 | P |
| 25.4 | | 25.36 | 25.00 | 25.80 | P |
| 50.0 | | 49.95 | 49.50 | 50.50 | P |

Notes: Data are for the unit as manufactured.
Temp: 21 deg. C        Humidity: 51 % RH

Customer: Marc H. Richmond, Providence, RI 02906
Purchase Order:  Credit card.

This report may not be reproduced, except in full, without permission form Ergonomics, Inc.
Page 1 of 1

**EXHIBIT A**

# Appendix B

# Jointed Children's Finger Probes

**EXHIBIT A**



**ERGONOMICS,INC.**



HOME

OUR COMPANY

SERVICES

EMC TEST EQUIPMENT

PRODUCT SAFETY TEST
EQUIPMENT

NEWS & EVENTS

PUBLICATIONS

CONTACT US

OUR CUSTOMERS

## Select a Product:

Category

### GET A QUOTE!

**Ergonomics Inc.**
PO Box 964
Southampton, PA 18966
800-862-0102
215-357-5124
Fax: 215-384-7582
info@ergonomicsusa.com

# Jointed Children's Finger Probes -- JFP32



The Jointed Children's Finger Probes come in a set of two. One size is for simulation of 0-36 month old children; one size for 3-14 years. These sized test fingers are to test for protection against access to hazardous parts with a human finger.

This is a precision probe made in accordance with IEC 61032, Figures 12 and 13. The child's finger is also called out in U.S. Federal Regulations, Title 16, Volume 2, Chapter 11, Part 1500 for consumer products.

### *Contact us for a quote!*

◄Back

© Ergonomics Inc. - all rights reserved

# EXHIBIT A

http://www.ergonomicsusa.com/accJFP32.html

7/27/2005

61032 © IEC:1997                    – 29 –

f)



*Dimensions in millimetres*

– Finger: metal material

– Handle: insulating material

The extension of the handle represents the arm of the child.

The handle is provided with an extension 451,6 mm long, and the probe should be applied with or without this extension, whichever is the more onerous condition.

Both joints shall permit movement in the same plane and the same direction through an angle of 90°.

This probe is intended to simulate access to hazardous parts by children of more than 36 months and less than 14 years.

**Figure 12 – Test probe 18 (small finger probe Ø 8,6)**

**EXHIBIT A**

Case 1:04-cv-12369-NG    Document 33-7    Filed 11/14/2005    Page 26 of 28

61032 © IEC:1997                              – 31 –

g)



– Finger: metal material

– Handle: insulating material

The extension of the handle represents the arm of the child.

The handle is provided with an extension, 464,3 mm long and the probe should be applied with or without this extension, whichever is the more onerous condition.

Both joints shall permit movement in the same plane and the same direction through an angle of 90°.

This probe is intended to simulate access to hazardous parts by children of 36 months or less.

**Figure 13 – Test probe 19 (small finger probe Ø 5,6)**

**EXHIBIT A**

## CALIBRATION CERTIFICATE

DATE:          2003-06-10-                    Doc. No:  JC030610-01

**CUSTOMER:**    Ergonomics-USA

**NAME OF TEST EQUIPMENT:**      CHILDRENS FINGER-6320(1)

**SERIAL No:**                   SERV-0306-1

**TRACE**                        AL001-AL010

**CONTROLED WITH**               MITUTOYO CD-15
**SERIAL No:**                   7180912

The Finger is measured with vernier calliper wich is calibrated with JOHANSSON CONTROL PIECES
AL 01-A990420

The test finger according to IEC 61032 page 29

| Dimension Nominal Value,mm | Measured Value mm | Requiered Minimun Value,mm | Requiered Maximun Value, mm |
|---|---|---|---|
| 451,6 | 451,6 | 451,0 | 452,2 |
| 38,10 | 37,90 | 37,80 | 38,40 |
| 38,40 | 38,00 | 38,10 | 38,70 |
| Dia 8,60 | 8,55 | 8.50 | 8,70 |
| Rad. 4,30 | 4,30 | 4,25 | 4,35 |
| 57,90 | 57,90 | 57,75 | 58,05 |
| 101,60 | 101,60 | 101,30 | 101,90 |
| | | | |
| | | | |

FRIBORG TESTTEKNIK AB
BOX 563 S-19205 SOLLENTUNA
SWEDEN
TELE : +46 8 6226505
FAX :  +46 8 6226677
Email :friborg_kjell@hotmail.com

-------------------------------------------------
K Friborg  -I Cardenas

**FRIBORG TESTTEKNIK AB**
PO Box 563
SE-192 05 Sollentuna
SWEDEN

| Tel/Fax int: | + 46 8 622 65 05/622 66 77 |
| Visiting adress: | Rudbecksvägen 52, SE-192 05 Sollentuna |
| E-mail: | friborg_kjell@hotmail.com |

# EXHIBIT A

# CALIBRATION CERTIFICATE

DATE:                2003-06-10                    Doc. No:  JC030610-21

**CUSTOMER:**        ERG-USA

**NAME OF TEST EQUIPMENT:**        CHILDRENS FINGER-6320(2)

**SERIAL No:**                     SERV-0306-2

**TRACE**                          AL001-AL010

**CONTROLED WITH**                 MITUTOYO CD-15
**SERIAL No:**                     7180912

The Finger is measured with vernier calipper wich is calibrated with JOHANSSON CONTROL PIECES
AL 01-A990420

The test finger according to IEC 61032 page 29

| Dimension Nominal Value, mm | Measured Value mm | Requiered Minimun Value, mm | Requiered Maximun Value, mm |
|---|---|---|---|
| 464,30 | 464,30 | 463,5 | 465,10 |
| 25,40 | 25,25 | 25,20 | 25,60 |
| 25,90 | 25,80 | 25,70 | 26,10 |
| Dia 5,60 | 5,50 | 5,50 | 5,70 |
| Rad. 2,80 | 2,80 | 2,75 | 2,85 |
| 44,00 | 44,10 | 43,85 | 44,15 |
| 101,60 | 101,80 | 101,30 | 101,90 |

FRIBORG TESTTEKNIK AB
BOX 563 S-19205 Sollentuna
SWEDEN
Tele:+46-8-6226505 Fax .+46-8-6226677
Email: friborg_kjell@hotmail.com

FRIBORG TESTTEKNIK AB
PO Box 563
SE-192 05 Sollentuna
SWEDEN

Tel/Fax int:        + 46 8 622 65 05/622 66 77
Visiting adress:    Rudbecksvägen 52, SE-192 05 Sollentuna
E-mail:             friborg_kjell@hotmail.com



**EXHIBIT A**