UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASMINE D. BUNTON, BY HER LEGAL GUARDIAN, LOURENCO P. DOSSANTOS, and LOURENCO P. DOSSANTOS,<br><br>PLAINTIFFS,<br><br>v.<br><br>SEARS ROEBUCK AND CO., and WHIRLPOOL CORPORATION,<br><br>DEFENDANTS. | CIVIL ACTION NO.: 04-CV-12369-NG |

## PLAINTIFFS OPPOSITION TO DEFENDANTS SEARS ROEBUCK & CO. AND WHIRLPOOL CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Jasmine D. Bunton and Lourenco P. Dossantos hereby oppose Defendants' Motion for Summary Judgment.

**I.      Facts**

The facts are simple and largely uncontested. On or about June 29, 2003 the Dossantos/Bunton family purchased a new refrigerator, model "Kenmore," from a Sears store in Braintree, Massachusetts. This refrigerator was, as plaintiff was informed during this litigation, designed and manufactured by defendant Whirlpool. The refrigerator was delivered and installed by Sears at the residence of plaintiff Jasmine Bunton.

This refrigerator is equipped with an integrated icemaker in the door of the freezer compartment. In order to retrieve either ice cubes or crushed ice, one has to push the lever installed in the door of the unit, preferably with a glass or mug, and ice will fall through an approximately 8" long chute and into the glass.

1

On or about April 16, 2004, plaintiff Jasmine Bunton, then eight years old, tried to retrieve crushed ice from the ice maker in the door of the freezer compartment of the refrigerator. Although Jasmine pushed the ice maker's lever with a glass, no ice would fall through the chute. Jasmine then reached up into the icemaker with her left hand, in an attempt to free up the jammed ice cubes. With her hand placed in the ice dispenser chute, her forearm and elbow activated the internal mechanism and the ice dispenser blades, located about 8" above the chute exit, severely lacerating her left hand. Jasmine was able to push the "lock" button on the display panel which stopped further movement of the blades. See Bunton Deposition P. 35:3-10.

Alerted by Jasmine's screams, her grandmother called 911 and notified the police. The police and fire department responded to her call for help. The rescue team had to dissemble the refrigerator and cut it open in order to free Jasmine. The exertion took about 2 ½ hours. During this time, Jasmine remained trapped in agony, with metal blades locked into her hand.

Jasmine was taken to the emergency room where sutures were applied to the lacerations. She was ultimately sent to a hand specialist at New England Medical Center who diagnosed severe damage to the digital nerve. Additional surgery was recommended and performed on May 7, 2004. A 7 cm segment of her sural nerve was removed from her left ankle and grafted into her injured hand. Additional nerve repair and muscle repairs were attempted in the same surgery. A third surgical procedure was performed on October 18, 2004 in an attempt to remove scar tissue. Additional surgery was recommended by defendants' medical expert.

Both plaintiffs' and defendants' medical experts agree that Jasmine will probably never fully recover normal sensation and functionality in her injured hand and will remain permanently impaired. See Expert Reports of Dr. Graf (for plaintiff) Dr. Nalebuff (for defendant), filed with this Court.

## II. Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers and interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. See Fed.R.Civ.P. 56(c). The court will review all facts in the light most favorable to the non-moving parties. Woods v. Friction Materials Inc., 30 F.3rd 255, 259 (1st Cir. 1994); Wasylow v. Glock, Inc., 975 F.Supp. 370, 376 (D. Mass. 1996).

## III. Summary of the Argument

Contrary to defendants' statements, Dr. Richman's testimony, including his opinion testimony, is admissible. In particular, it meets the standards set forth by Rule 703 F.R.E. as delineated by Daubert v. Merell Dow Pharm., Inc, 509 U.S. 579 (1993). Dr. Richman is qualified to testify in this case and his opinion is relevant as it will assist the trier of fact to understand the evidence and the facts of the case. It is based upon sufficient data and information and utilizes scientifically reliable methods, correctly applied to the case, making his testimony reliable.

Furthermore, Dr. Richman's testimony, although certainly helpful and relevant, is not "the only evidence that the subject refrigerator was defective and proximately caused injury," as Defendants incorrectly state. The evidence presented is clear and convincing and well within a jury's realm of knowledge. Even without the testimony of an expert, Plaintiffs' claims should stand.

Moreover, it must be pointed out that the uncontested facts and concessions by Defendants alone present ample evidence for Plaintiffs to succeed at least on their causes of action sounding in strict liability; all elements of a strict liability claim are either uncontested or have been expressly conceded by Defendants (see: Motion for Partial Summary Judgment).

3

IV. **Argument**

1. Dr. Richman's testimony, including opinion testimony, is admissible

As elaborated in Plaintiffs' Memorandum in Opposition to Defendants' Motion to Exclude the Testimony of Plaintiffs' Expert, Dr. Richman is qualified to testify in this case. Dr. Richman is a graduate of the Massachusetts Institute of Technology and holds a PhD in Metallurgy and Material Science from the same school. He taught engineering full time at Brown University for over 30 years where he was in charge of the Undergraduate Programs in Engineering. He taught classes in dealing with warnings on the operation of equipment and has been involved in product design for decades. He is a well sought after forensics expert, having served as court appointed expert to US District Courts and having testified in over 175 trials and depositions. He is amply qualified to testify in this case, requiring, at best, basic engineering expertise and involving the most simple principles of physics and engineering (see: Estate of Ashton Chapman v. Bernard's Inc., and Mattress Discounters, 167 F.Supp.2d 406 (D. Mass. 2001) and Carifio v. Benetton Sportsystem USA, Inc., 2005 WL 1527801 (D. Mass. 2005) and Plaintiffs' Memorandum in Opposition to Defendants' Motion to Exclude the Testimony of Plaintiffs' Expert, p. 6 - 8).

Dr. Richman's testimony is relevant and reliable. He interviewed the Plaintiff and the relevant witnesses and carefully studied safety audit reports by Whirlpool and the deposition transcript of Defendants' expert. He thoroughly examined the refrigerator on two occasions and performed scientific tests appropriate for the analysis of the ice maker; in particular, he took dimensional measurements of the ice chute (length and diameter) and he tried to reach up the ice maker's chute with measuring tools. He also determined and analyzed the location of the cutting tools. Based on his tests and analysis, he concluded that it is easily possible for a person with a

4

smaller-than-average arm, i.e. a child, to reach the cutting tools in the ice maker, risking serious injury to hand and fingers. He then concluded that such a design is unreasonably dangerous for its intended purpose. He also opined that, since the ice maker admittedly does not contain any warning against this hidden danger, the absence of such constitutes an additional defect.

The accuracy of Dr. Richman's methodology and results have not been contested by Defendants; they claim that additional tests of some kind should have been performed yet do not set forth what kind of "test" they deem necessary. They also believe that Dr. Richman should have subjected his scientific methodology (the talking of dimensional measurements with measuring tools and attempts to reach up the ice chute) to "peer review" and "publication." Plaintiffs believe that, given the simplicity of the apparatus and the tests, these allegations abut on ludicrousness and do not merit further response.

2. Even absent an experts' testimony, liability can be established

Defendants intentionally commit error when they state that the only evidence to support the defective design of the subject ice maker is Dr. Richman's opinion. This case is of such a simple nature that a jury could decide with their own lay knowledge whether the subject ice maker is unreasonably dangerous. Moreover, it must be stressed again that the uncontested facts and concessions by Defendants alone present ample evidence for Plaintiffs to succeed at least on their cause of action sounding in strict liability; all elements of at least a strict liability claim are either uncontested or have been expressly conceded by Defendants.

a) Dr. Richman's testimony, although certainly helpful and relevant, is not needed to establish the elements of liability nor to conclude that the subject ice maker was unreasonably dangerous and unfit for its intended purpose. It is well established that in cases where a jury can find on their own lay knowledge that the product exposes its users to unreasonable dangers, expert testimony is not necessary.

i) In *doCanto v. Ametek* (328 N.E.2d 873, Mass. 1975), a widely quoted decision, the Supreme Judicial Court decided a case quite similar to the underlying litigation. Plaintiff filed an action against the manufacturer of a commercial ironer for injuries she had sustained when her hand was pulled into the ironer while feeding sheets into the machine. Existing safeguards failed to sufficiently protect plaintiff. The court held that the evidence was sufficient for submission to a jury on the questions of negligent design and negligent failure to warn, despite manufacturers' contention that expert testimony concerning safe design of the ironer was an indispensable element of the case (an expert was not retained at all in this case). The court found that the jury could have found on its own, without an experts' testimony, that the ironers overtravel (which was the defective part) was not consistent with Defendant's duty to design the machine with reasonable care.

ii) *Smith v. Ariens Company* 337 N.E.2d 954 (1979), one of the best known and most often quoted Massachusetts product liability cases, involves an accident with a snow mobile, resulting in personal injury to the driver. Two brake brackets of the snowmobile had sharp metal protrusions that, according to plaintiff, resulted in an aggravation of the injuries sustained in the accident. One of the questions on appeal was whether the plaintiff had presented sufficient evidence to establish a breach of defendant's duty to design products reasonably fit for their intended purpose. Plaintiffs had likewise not introduced any expert testimony showing that the snowmobile was negligently designed. The court nevertheless held, quoting *doCanto v. Amerek*, that:

> "in cases in which a jury can find of their own lay knowledge that there exists a design defect which exposes users of a product to unreasonable risks of injury, expert testimony that a product is negligently designed is not required." (Smith v. Ariens, at p. 957).

It further held that *"it is within the knowledge of a jury whether unshielded metal protrusions on the handle bar of a snowmobile constitute a defect in design which creates an unreasonable risk of harm"* and stated that *"the evidence presented to the jury, including the existence and placement of the protrusions and the absence of guards to cover them, was sufficient to allow a jury to determine whether the snowmobile was negligently designed."*(Smith v. Ariens, at p. 957 – 958).

See also Hayes v. Hobarth Corporation, 387 N.E.2d 176 (1979), holding that: *"it was open to a jury to find on their examination of the food chopper and photographs thereof that the defendant had been negligent in designing the machine which readily permitted the user's fingers to reach the cutting blades."*

In the case at bar, ample factual evidence has been presented. A jury is capable of determining on their own lay knowledge whether the ice maker was defectively designed; hence, an expert is not necessary to prove plaintiffs' case.

b) Finally, it should be noted that the elements of liability were conceded by Defendants, hence rendering expert testimony and further discovery unnecessary (see: Motion for Partial Summary Judgment). The uncontested facts and the explicit concessions of Defendant Whirlpool's assigned 30(b)(6) witness, Mr. Boughton, alone present ample evidence for Plaintiffs to succeed at least on their causes of action sounding in strict liability.

In order to succeed with a strict liability claim, Plaintiffs have to show that (1) Defendants manufactured or sold the product; (2) that Plaintiff is a foreseeable user, using the product in a foreseeable manner (including foreseeable misuse); (3) a condition existed rendering the product unreasonably dangerous for its intended purpose and its intended users; and finally

7

(4), that this unreasonably dangerous condition was the cause of the accident and that the accident was the cause for plaintiff's damages.

Defendants have admitted that they manufactured or sold the product (1); that plaintiff Jasmine Bunton is a foreseeable, intended user of the ice maker (see: Boughton Depo. P. 47:8-16) who used the product in a foreseeable manner (2) - their designated witness and expert <u>explicitly conceded that Plaintiff's behavior was foreseeable and even recommended, yet falsely believed not to be dangerous</u> (see: Boughton Depo. P. 41:6-23 and P. 53:18-24). The conclusion that such an apparatus is unreasonably dangerous (3) is indisputable. Finally, the issue of causation (4), meaning the actual causality of the products' design for the accident and the accident's causality for Plaintiff's damages, is established beyond doubt and has not been contested by Defendants.[1]

## V.     Conclusion

Plaintiffs' expert testimony, including opinion testimony, is admissible evidence. Even absent expert testimony, Plaintiffs are able to present ample evidence to establish liability as the elements of a claim of strict liability have been conceded or are uncontested. Furthermore, in the case at bar, a jury can find of their own lay knowledge that a design defect exists, thus rendering expert testimony unnecessary. Defendants' motion for summary judgment based should be denied.

---

[1] Plaintiffs believe that Defendants' motion was mistakenly titled "Motion for Summary Judgment Based on **Lack of Causation Evidence**" as Causation is an uncontested fact.

8

Plaintiffs,
By their attorneys,

_____
Andrew J. Tine (BBO#633639)
Haese, LLC
30 Federal Street
Boston, MA 02110
(617) 428-0266 – Telephone
(617) 428-0276 – Fax
atine@haese.com