UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASMINE D. BUNTON, BY HER LEGAL GUARDIAN, LOURENCO P. DOSSANTOS, and LOURENCO P. DOSSANTOS,<br>      Plaintiffs,<br><br>v.<br><br>SEARS ROEBUCK AND CO., and WHIRLPOOL CORPORATION,<br>      Defendants. | No.: 04-CV-12369-NG |

**MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
PLAINTIFF TO UNDERGO EXAMINATION BY DR. CHARLES CASSIDY**

**INTRODUCTION**

This lawsuit involves a personal injury that the minor plaintiff, Jasmine Bunton ("Bunton"), suffered on April 16, 2004 after she slid her hand and arm up an ice dispenser chute that was part of a Whirlpool refrigerator and came into contact with the ice crusher blades that were part of the ice crushing feature of the refrigerator. Bunton underwent surgery on May 7, 2004 performed by Dr. Charles Cassidy at the New England Medical Center. Since that surgery, there is no record of her ever treating with Dr. Cassidy again. Sears Roebuck & Co. and Whirlpool Corporation seek an order from this court compelling Bunton to undergo an additional examination with Dr. Cassidy at its own expense.

**BACKGROUND**

On April 16, 2004, Bunton alleges that she suffered injury to her left hand after placing her left hand into the automatic ice dispenser feature of the home refrigerator. (Exhibit A: Amended Complaint). As part of her medical treatment, she underwent

surgery performed by Dr. Charles Cassidy ("Cassidy") who, on May 7, 2004, sought to repair the nerves in her hand. (Exhibit B: New England Medical Center Medical records)[1]. She has not returned to see Dr. Cassidy since the surgery was completed.

After filing the complaint to this action, the plaintiff retained Dr. Frank A. Graf ("Dr. Graf"), an orthopaedic surgeon from New Hampshire, as an expert in this action. When asked at his deposition if Bunton would benefit from having a follow-up examination by Dr. Cassidy, Dr. Graf testified she would benefit from such an examination because it would be good medical practice and good follow up. (Exhibit C: Graf Deposition, p.52, ll. 10-15). The Defendants' expert witness, Dr. Edward Nalebuff, concurred stating at various points during his deposition that Bunton should be reexamined by Dr. Cassidy (Exhibit D: Deposition of Dr. Nalebuff, p.22, l.21 to p.23, l. 2; p.23, ll. 10-19; p.26, ll. 19-21;). For several months, Whirlpool has offered to pay the cost of an examination of Miss. Bunton conducted by Dr. Cassidy so that there is no added expense for the plaintiff. Counsel for the plaintiff has rejected this request.[2]

## ARGUMENT

In an action for damages for personal injuries, the nature and extent of the injuries is a major issue. *Vopelak v. Williams*, 42 F.R.D. 387, 389 (N.D. Oh. 1967). When a plaintiff places his or her physical condition in controversy, the defendant is entitled to request that the plaintiff submit to an examination by a doctor of the defendant's choosing upon a showing of good cause. *Schlagenhauf v. Holder,* 379 U.S. 104, 119, 85 S. Ct. 234, 13 L. Ed. 2d 152 (1964); *see Looney v. National Railway Passenger Corp.*,

---

[1] Counsel has made effort to redact the records in accordance with L.R. 5.3(A)

[2] On Tuesday, March 7, 2006 a third letter requesting that the plaintiff agree to an examination by Dr. Cassidy was faxed to Attorney Glenn Haese. Attorney Andy Penry responded to the request the same day by e-mail stating that "[they] will not subject [Miss. Bunton] to such an examination at the defendant's request." (Exhibit E: March 7, 2006 e-mail from Andy Penry).

142 F.R.D. 264 (1992).  The number of times that a plaintiff may under go an examination is not limited.  *Peters v. Nelson*, 153 F.R.D. 635, 637 (N. D. Ia. 1994).  Courts may order additional examinations of the plaintiff in order to obtain the full truth concerning the matter in controversy.  *Ishler v. Cook*, 299 F.2d 507 (7th Cir. 1962).  When there has been a substantial time lag since the initial examination of the plaintiff, good cause exists for the court to order the plaintiff to undergo an additional examination.  *See Lewis v. Neighbors Constr. Co.,* 49 F.R.D. 308 (W. D. Mo. 1969); *Vopelak v. Williams,* 42 F.R.D. 387 (D. C. Oh. 1967).

In *Lewis*, the plaintiff was an individual who alleged that his left hand, wrist, and fingers were severely and permanently injured and impaired because a guard on a saw he was using failed.  The defendant in that case moved to have him examined by a doctor other than his own.  The plaintiff objected arguing that he had already been examined by a doctor chosen by the defendant.  The court allowed the defendant's motion noting that Rule 35, the rule governing medical examinations of parties, did not expressly limit the number of examinations a party whose physical condition was in controversy would be subjected to.  *Lewis*, at 309.  The court also stated that there would not be any prejudice as it pertained to the plaintiff because the plaintiff could always raise an objection to the report if offered at trial or comment on it.  *Id*.

In the instant case, the Defendants are not requesting that Bunton subject herself to an examination by a "hired gun" or new doctor.  Rather, the Defendants are asking that she follow-up with the doctor who did the procedure to repair her injury.  He would be a neutral examiner with no bias in providing such an examination.  It is important from a medical stand point that she follow-up with Dr. Cassidy.  As the plaintiff's own expert

stated, it's "just good medicine and good follow up" for her to be reexamined by the doctor who treated her.  However, by not seeing Dr. Cassidy in nearly 2 years after the surgery, she is preventing him from practicing good medicine and is blocking the chance to get an independent assessment of the extent of her injury.  Such an examination would not merely benefit the parties.  Such an examination would also benefit a jury and help them in reaching a fair and just verdict after a trial.  There would be no added cost for the plaintiff as the Defendants are willing to pay for the cost of the examination.  It is a no lose situation for her to be seen by Dr. Cassidy.

## CONCLUSION

For the foregoing reasons, the Defendants request that this court order that the plaintiff subject herself to an examination by Dr. Cassidy.

> Respectfully submitted
> **SEARS, ROEBUCK AND CO., and**
> **WHIRLPOOL CORPORATION**
> By their Attorneys,
> CAMPBELL CAMPBELL EDWARDS &
> CONROY, PROFESSIONAL CORPORATION
>
> /s/ Steven M. Key_____
> Richard L. Edwards (BBO# 151520)
> Steven M. Key (BBO# 638145)
> One Constitution Plaza
> Boston, MA 02129
> (617) 241-3000
> redwards@campbell-trial-lawyers.com
> skey@campbell-trial-lawyers.com
> AND
> Robert W. Foster, Jr., Esq. (Admitted Pro Hac Vice)
> Nelson Mullins Riley & Scarborough LLP
> 1320 Main Street, 17th Fl.
> Columbia, South Carolina  29201
> (803) 799-2000

**CERTIFICATE OF SERVICE**

   I, Steven M. Key, certify that on March 13, 2006, a true copy of *Memorandum of Law in Support of Defendants' Motion to Compel Plaintiff to Undergo Examination by Dr. Charles Cassidy* was sent by first-class mail, postage prepaid to Glen, Haese, LLC, 70 Franklin St., 9th Floor, Boston, MA 02110

            /s/ Steven M. Key
            Steven M. Key