UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASMINE D. BUNTON, BY HER LEGAL GUARDIAN, LOURENCO P. DOSSANTOS, and LOURENCO P. DOSSANTOS,<br><br>PLAINTIFFS,<br><br>v.<br><br>SEARS ROEBUCK AND CO. et al.,<br><br>DEFENDANTS. | CIVIL ACTION NO.: 04-CV-12369-NG |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DEFENDANTS TO COMPLY WITH THEIR DUTY TO SUPPLEMENT AND CORRECT PRIOR DISCLOSURES AND DISCOVERY RESPONSES

### I. INTRODUCTION

Plaintiffs Jasmine D. Bunton, by her legal guardian, and Lourenco P. Dossantos file this Motion to Compel Defendants to supplement their prior discovery responses.

### II. BACKGROUND

1.  **Facts**

This action was instituted by the minor plaintiff, Jasmine Bunton ("Jasmine") and her guardian after her left hand was severely injured in a refrigerator ice dispenser designed and manufactured by defendant Whirlpool and sold and marketed by defendant Sears Roebuck. Jasmine's family bought a Kenmore refrigerator on June 29, 2003 in a Sears store in Massachusetts. The refrigerator has an ice maker in the freezer door. When ice is dispensed, a lever is pushed that activates the cutting tools concealed in the door, and ice (either crushed or in cubes) is dispensed through an approximate 8" long chute. The refrigerator was installed by Sears representatives at Jasmine's house. Although a water line was never hooked up to the ice maker, the ice dispenser was functional.

On or about April 16, 2004, then 8 year old Jasmine tried to dispense ice from the ice maker; when no ice fell out, she reached up into the chute with her left hand in an attempt to free up an ice jam. With her hand placed in the ice dispenser chute, her forearm pressed against the lever, activating the internal mechanism; the hidden ice crusher blades started to rotate and severely lacerated her hand. With her other hand, she was able to push the "lock" button on the display panel, preventing further injury and the likely loss of her fingers. Alerted by her agonized screams, family members called a rescue team that was finally able to free Jasmine. In order to do so, the rescue team used a cutting tool. The process took over two hours during which Jasmine remained trapped with blades locked into her hand.

After emergency treatment, Jasmine had to undergo additional, complicated surgery including nerve grafting from her leg. It is uncontested that, as a result of this accident, Jasmine will be physically impaired for the rest of her life.

2.    **Plaintiffs' Frustrated Discovery Attempts**

It is potentially important to plaintiffs' case to know the extent to which defendants were aware of the hazardous nature of the ice maker and specifically, whether and when defendants were aware of accidents similar to the one in which Jasmine was injured. Plaintiffs have requested information about prior accidents, only to be repeatedly informed in responses to discovery requests and in expert reports and deposition testimony, that to the best of defendants' knowledge no similar accident ever happened, and that Jasmine's accident was the only one of its kind. It was not until defendants' corporate designee and expert was deposed **a second time** on January 12, 2006, that he, over objections from defendants' counsel,[1] finally admitted the

---

[1] Defendants' counsel's attempts to prevent Defendants' expert from having to answer a legitimate question fills four pages of the transcript of Mr. Boughton's January 12 deposition.

2

truth: accidents like the one that injured Jasmine have happened on other occasions, and defendants knew it.

3.    **Defendants' Arguments Concerning the Absence of Other Accidents**

Defendants have denied the existence of similar accidents. They have cited their expert's report and his testimony regarding the alleged uniqueness of Jasmine's accident in their briefs and oral arguments. They did so to argue that Jasmine's accident was not "foreseeable." In November 2005, defendants filed a "Response to Plaintiffs' Motion for Partial Summary Judgment" and argued that Jasmine's accident constituted "unforeseeable misuse" of their product because "<u>no witness or the plaintiffs or defendants were aware of a similar ice chute incident prior to this incident</u>. Mr. Boughton's report stated that the 'safety audit and hazard analysis process <u>failed to reveal any incident similar to the Bunton incident, and therefore this incident and injury was not foreseeable by Whirlpool Corporation</u> (Boughton Report, Ex. B)". Mr. Boughton also testified that in the many years he has worked in refrigerator design, Jasmine's injury was the first of this kind that he had encountered. In their "Statement of Material Facts", also filed in November 2005, <u>defendants alleged that "This accident was a completely unforeseeable event and misuse of the product. The testimony from the Whirlpool engineer was that he had been around refrigerator designs since 1968, and the Bunton accident was the first time he had ever heard of a person being injured by putting their hand up into the ice dispenser chute</u> ... plaintiff has produced no witness in this case who had ever heard of such an incident".

In summary, in their attempts to have Jasmine's case dismissed, defendants heavily relied on the argument that the accident was a singular event. However, as stated below, it now appears that this assertion is incorrect.

3

4. **Plaintiffs' Counsel Have Made Good Faith Efforts to Resolve the Dispute**

In a letter dated March 6, 2006, attached hereto as **Exhibit A**, plaintiffs' counsel notified the defendants that they believe that there are discrepancies in their expert's report and statements on the record and requested that defendants comply with their duties under Rule 26 FRCP. Defendants answered by letter of their counsel, attached hereto as **Exhibit B** and declined to supplement.

On April 10, plaintiffs' counsel again contacted defendants' counsel, requesting supplementation of response No. 10 of Defendant Sears, Roebuck to Plaintiffs' First Set of Interrogatories and of Response No. 7 of Plaintiffs' First Request for Production. In an attempt to resolve the dispute, plaintiffs' counsel also requested a telephone conference with defendants' counsel (see: letter to defendants' counsel, attached hereto as **Exhibit C**). Defense counsel have not responded to this request.

### III. ARGUMENT

Rule 26(e) imposes an ongoing duty to seasonably amend responses to discovery requests. (Rule 26(e)(2)FRCP). Additionally, disclosures under Rule 26(a) must be appropriately supplemented. The burden to supplement is on the party responding to discovery. (O'Connor's Federal Rules Civil Trials, Chapter 6A, § 11.1). With respect to experts, this duty extends to information contained in the expert's written report and to information provided through a deposition (Rule 26(e)(1) FRCP). This affirmative duty does not end when discovery closes (Klonoski v. Mahlab, 156 F.3d 82, 84-85 (1st Cir. 1998); indeed, Rule 26(e) is "designed, at least in part, to deal with the problem of later-discovered evidence and requires that a party be under a continuing duty to request for production, whenever 'the party learns that the [previous] response is in some material way incomplete or incorrect'" (Marianjoy Rehabilitation Hospital v.

4

Williams Electronic Games, Inc., 1996 WL 411395 (N.D.Ill.1996) at p. 3). Knowing concealment is not required (Reed v. Iowa Mar.& Repair Corp., 16 F.3d 82, 84-85 (5th Cir.1994).

According to defendants' expert, he was informed about similar accidents "sometime" after Jasmine's injury occurred and his second deposition on January 12, 2006. Yet defendants have done nothing to supplement their prior responses so as to provide information about the similar accident, which may well be relevant to the issues of foreseeability raised by defendants.

**1.    Defendants Have Failed to Supplement and Correct the Information Provided by Their Expert During Deposition**

    a)    Facts

During his first deposition on June 15, 2005, Mr. Stephen G. Boughton, Defendants' corporate representative and later expert, was specifically questioned about accidents similar to the one in which Jasmine was hurt. Mr. Boughton testified that in the many years he has worked for Whirlpool, Jasmine's injury was the first of this kind that he encountered and that he had never heard of any similar incident since 1968, the year he was first involved in refrigerator design:

> Q. Are you aware of any present or past claims against Whirlpool by anyone claiming to have been injured by putting their hand up the ice dispenser chute?
> A. This is the first one I have heard of. I've been involved in refrigerator design since 1968.
> (See: Boughton Depo. I, 67:24; 68:1-6, attached hereto as **Exhibit D**).

When Mr. Boughton was asked in more general terms whether he believed that an accident like Jasmine's was possible, he replied:

> "Obviously in this case, this is the first one that I've ever heard of like this". Obviously, it is possible..."
> (See: Boughton Depo. I, 42:23-24; 43:1-2, attached hereto as **Exhibit E**).

During his **second deposition** on January 12, 2006, Mr. Boughton was again asked if he

had heard about similar accidents. Over objections by defendants' counsel that encompass four (4) pages in the transcript of the deposition (see: Boughton Depo. II, pages 49:1-53:2, attached hereto as **Exhibit F**), Mr. Boughton finally admitted that he had indeed been informed about similar accidents involving ice makers of refrigerators:

> Q: "Have you heard of anybody hurting themselves [sic] by sticking their hand up an ice chute of a refrigerator?"
> A: "Yes."
> Q: "When did you hear of this?"
> A: "Sometime after I was notified of the case and now."
> Q: "How did you acquire that knowledge?"
> A: "Don't remember specifically."
> Q: "Do you know who you acquired it from?"
> A: "No I don't know."
> Q: "And you said after what, after you became involved in this case?"
> A: "Yes."
> Q: "As an expert or otherwise? Let me just rephrase that. When approximately did you learn that someone was injured by sticking hair [sic] hand up an ice chute of a refrigerator? And I assume it's someone after I was notified of this case --"
> A: "I've already answered that question. It was <u>sometime after I was notified of this case --</u>"
> <u>Q: "When were you notified of this case?"</u>
> <u>A: "--and now. I believe it was sometime in 2004."</u>
> ...
> Q: "Was it a Whirlpool refrigerator"?
> A: "Probably but I am not sure"
> ...
> Q: "Did you hear it from someone at Whirlpool or from someone outside of Whirlpool?
> A: "Probably somebody at Whirlpool".
> (see: Boughton Depo. II, 53:3-55:16, attached hereto as **Exhibit G**).

b)  <u>Discussion</u>

Rule 26(e)(1) imposes the duty to supplement expert testimony. The duty arises when a party learns that statements in an expert report or provided in expert testimony are in some material respect incomplete or incorrect (see: <u>Marianjoy Rehabilitation Hospital v. Williams</u>

6

Electronic Games, Inc., 1996 WL 411395 (N.D.Ill.1996) at p. 3; Baicker-McKee et al, Federal Civil Rules Handbook, Pt.VII).

Mr. Boughton admitted that the statements made during his first deposition were not correct. He became aware of the inaccuracy "some time between 2004 and now" ("now" being the date of his second deposition on January 12, 2006). Plaintiffs do not know when Mr. Boughton became aware of the similar accident. The defendants and Mr. Boughton may have learned of the similar accidents at a point in time after (a) the interrogatories and document production requests were responded to (February 17, 2005 and May 16, 2005, respectively); and/or (b) Mr. Boughton's first deposition (June 17, 2005); and/or (c) Mr. Boughton's written report was completed (September 30, 2005); and/or (d) defendant's written and oral arguments on foreseeability were made to the Court predicated upon the alleged uniqueness of Jasmine's mishap (November 14, 2005). Then again, they may have known earlier. But giving defendants the benefit of every doubt, even if Mr. Boughton learned of the similar accidents between November 14, 2005 and January 12, 2006, defendants still must supplement. And, if defendants knew about the similar accident at the time they responded to written discovery, or if Mr. Boughton knew at the time of his first deposition, or if defendants knew it when they argued to the court, other action may be appropriate. At the very least, the court should require defendants to disclose when they first learned of the similar accidents.

Defendants should be compelled to supplement as follows:

1. **Expert's Report**

   a) Facts

Mr. Boughton stated in his expert report, dated September 30, 2005, that "the safety audit and hazard analysis <u>failed to reveal any incident similar to the Bunton incident</u>, and therefore this

incident and injury was not reasonably foreseeable by Whirlpool Corporation" (see: Report of Mr. Stephen G. Boughton, attached hereto as **Exhibit H**).

b) Discussion

Mr. Boughton's testimony during his second deposition appears inconsistent with the information provided in his earlier report. Once he learned about the similar accidents, he should have corrected his testimony.

Defendants should be compelled to comply with their duty under Rule 26(e)(1) FRCP and to correct and complete the information contained in the expert report. The report should reflect that similar accidents occurred and that defendants were aware of them.

2.  **No. 10 of Plaintiffs' First Set of Interrogatories**

    a) Request No. 10

    *To provide the case caption, docket number, state and court of any pending litigation or settled litigation relating to injuries caused by the use of any Sears or Kenmore door mounted ice dispensers.*

    b) Response No. 10

    *Defendant Sears objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, <u>Defendant Sears has been unable to locate any pending or settled litigation relating to injuries caused by any Sears or Kenmore door mounted ice dispenser</u>.* (emphasis added)

    (See: Plaintiffs' First Set of Interrogatories attached hereto as **Exhibit J**)

    c) Discussion

In the light of Mr. Boughton's testimony in his second deposition, this response may require supplementation. The witness admitted that he was informed about similar accidents "some time between he was informed of this case in 2004" ... "and now". Defendants should amend their response if there was pending or settled litigation of the type about which inquiry was made.

3. **No. 7 of Plaintiffs' First Request for Production of Documents:**

   a) <u>Request No. 7</u>

   *Produce all documents, communications, complaints and lawsuit pleadings that relate to allegations of injury resulting from the use of the dispenser and/or ice maker/crusher on the subject model refrigerator.*

   b) <u>Response No. 7</u>

   *Whirlpool objects to this request on the grounds that it is overly broad. Subject to and without waiving the foregoing objection, <u>Whirlpool states that it has been unable to identify any prior claims or lawsuits alleging injury resulting from the use of the ice dispenser and/or ice maker/crusher on the subject model refrigerator.</u>* (emphasis added)

   (See: Plaintiffs' First Request for Production of Documents, attached hereto as **Exhibit K**)

   c) <u>Discussion</u>

   In the light of Mr. Boughton's testimony in his second deposition, this response appears incorrect or incomplete. Once defendants learned of the existence of similar accidents involving the ice maker, they should have amended their response and disclosed the requested documents. Defendants are asked to comply with their affirmative duty to amend their responses and to produce to plaintiffs all responsive, non - privileged documents.

## IV. CONCLUSION

Plaintiffs request that this court order defendants to (a) disclose any and all information regarding accidents that have occurred involving ice makers of Whirlpool or other manufacturers, including but not limited to dates and locations of the accidents, the names and addresses of the people involved, any and all legal actions including alternative dispute resolutions, taken against Whirlpool or other defendants including information regarding settlements and/or judgments; and (b) to produce any and all documents, including electronic documents, communications, memos, complaints and pleadings that relate to allegations of injury resulting from the use of an ice dispenser/crusher on any refrigerator sold under the Sears or Kenmore label that uses the same dispenser and/or ice maker/crusher assembly used in the refrigerator that is the subject of this case.

Plaintiff also request that the Court direct defendants to disclose when they were first informed about other incidents.

Plaintiffs,
By their attorneys,

_____
Glenn H. Haese, BBO# 662939
Haese, LLC
30 Federal Street
Boston, MA 02110
(617) 428-0266 – Telephone
(617) 428-0276 – Fax
ghaese@haese.com

DATED this 5th Day of May, 2006