UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASMINE D. BUNTON, BY HER LEGAL ) <br> GUARDIAN, LOURENCO P. DOSSANTOS, and ) <br> LOURENCO P. DOSSANTOS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> ) <br> SEARS ROEBUCK and COMPANY and ) <br> WHIRLPOOL CORPORATION, ) <br> ) <br> Defendants. ) | No.: 04-CV-12369-NG <br><br> **DEFENDANTS SEARS ROEBUCK & CO. AND WHIRLPOOL CORP.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL** |

Defendants oppose Plaintiffs' Motion to Compel because they have previously responded accurately to Plaintiffs' discovery request. Defendants so advised Plaintiffs that prior discovery responses have been accurate, and there was no need to supplement prior discovery responses. (See Correspondence to Plaintiffs' Counsel dated March 28, 2006, Exhibit A.) Although discovery responses were accurate, Plaintiffs' filed this Motion to Compel nonetheless.

Contrary to the insinuations made by Plaintiffs' Motion to Compel, all discovery responses by Defendants were accurate when made, and remain accurate today. Contrary to assertions in Plaintiffs' Motion that Defendants stated there has never been any similar incident, Defendants never made such an assertion anywhere in its discovery responses. Defendants have simply asserted, several times, that the Bunton incident, which is the subject of this lawsuit, was "unforeseeable" because this incident was the first of this type made known to engineer Stephen Boughton, who was the Manager of Product Safety for Whirlpool Corporation for refrigeration products. Furthermore, Mr. Boughton very

clearly stated in his second deposition that at some point in time after he was made aware of the Bunton incident, he was made aware of a subsequent incident where a small child was cut on another model Kenmore brand refrigerator.

Defendants will address each discovery area separately to demonstrate all responses were, and remain, accurate.

### A.     Depositions of Stephen Boughton

Mr. Boughton provided two depositions in this case.  First, he was identified as Whirlpool's 30(b)(6) company representative on June 15, 2005.  After he provided an expert report, he was deposed a second time, on January 12, 2006, as an expert witness.

As pointed out by Plaintiffs' counsel in Mr. Boughton's first deposition, he testified the Bunton incident "is the first one I have heard of."  There is nothing inaccurate or inconsistent about this testimony.  The Bunton accident was, and remains, the first notice to Mr. Boughton of a child extending their arm up into the ice dispenser, and being injured.

During Mr. Boughton's second deposition, he testified he became aware of another incident similar to the Bunton incident sometime subsequent to the Bunton incident.[1]

>   Q.     When did you hear of this?
>
>   A.     Sometime after I was notified of the case and now.
>
>   (Boughton depo., p. 53.)

---

[1] Contrary to the implication by Plaintiffs' counsel that Defendants objected to the second deposition to hide information, the objection very specifically stated the second deposition was solely limited to Mr. Boughton's expert report and opinions, and was never intended to be a second 30(b)(6) deposition.  At the time of the objection, Plaintiffs' counsel started asking the same questions that had been asked in Mr. Boughton's first deposition.  There was never any instruction not to answer the questions, but rather merely an objection that the deposition was never intended to be a second 30(b)(6) deposition of the same witness with the same questions a second time.

When read together, Mr. Boughton's testimony is very clear that this incident was the first incident of this type Mr. Boughton had ever heard of occurring. Sometime subsequent to this incident, Mr. Boughton heard of another incident similar to this incident. Unless one tries to read something into the actual deposition that does not exist, there are no inconsistencies or inaccuracies in the deposition testimony.

### B.    Expert Report

Plaintiffs complain that there appears to be some inconsistency between the second deposition testimony and the Boughton expert report where he stated "the safety audit and the hazard analysis process failed to reveal any incident similar to the Bunton incident and therefore this incident and injury was not reasonably foreseeable by Whirlpool Corporation." (Boughton Expert Report, Exhibit B.) There exist no inconsistencies between this statement in Mr. Boughton's expert report and his deposition testimony.

Plaintiffs' counsel apparently failed to understand that the "safety audit and hazard analysis process" occurs prior to actual manufacture of the product. At the time of the pre-manufacture safety audit and hazard analysis of the subject refrigerator, Whirlpool was unaware of any incident similar to the Bunton incident. As previously stated, the Bunton accident was the first accident of this type known to Mr. Boughton or anyone at Whirlpool involved in the safety audit process. That fact forms part of the basis for the opinion of Stephen Boughton that at the time of manufacture, this incident and injury was not reasonably foreseeable.

### C.    Written Discovery Request

As part of its Motion to Compel, Plaintiffs raised two specific written discovery requests that it requested be supplemented. Neither written discovery request needs supplementing as both responses are accurate. Each request and response will be discussed separately.

      1.     <u>Sears Response to Interrogatory No. 10</u>

This interrogatory request asked:

> "Please provide the case caption, docket number, state and court of any pending litigation or settled litigation relating to injuries caused by the use of any Sears or Kenmore door mounted ice dispensers."

Sears responded:

> "Defendant Sears objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, Defendant Sears has been unable to locate any pending or settled litigation relating to injuries caused by any Sears or Kenmore door mounted ice dispensers."

At the time of the response, and still today, Sears has been unable to locate any pending or settled litigation caused by Sears or Kenmore door mounted ice dispensers.

The subsequent incident presumably referenced in Mr. Boughton's deposition has not resulted in any litigation to date.

      2.     <u>Whirlpool Response to Request For Production No. 6</u> [2]

This Request asked Whirlpool to:

> "Produce all documents, communications, complaints and lawsuit pleadings that relate to allegations of injury resulting from the use of the dispenser and/or ice maker/crusher on the subject model refrigerator."

---

[2] The plaintiffs' motion refers to this request as Request No. 7. However, the text of the request cited in the plaintiffs' motion is from Request No. 6.

Whirlpool responded:

> "Whirlpool objects to this request on the grounds that it is overly broad. Subject to and without waiving the foregoing objection, Whirlpool states that it has been unable to identify any prior claims or lawsuits alleging injury resulting from the use of the dispenser and/or ice maker/crusher on the subject model refrigerator."

The subject model refrigerator is model number 106.53634300. A search of Whirlpool records failed to produce any prior claims or lawsuits involving the subject model refrigerator.

### D.      Subsequent Claim Involving Ice Dispenser

Notwithstanding the accuracy of Defendants' prior discovery responses, Defendants were able to locate one subsequent claim, which is not in litigation, involving a Sears or Kenmore refrigerator, which involved a different model refrigerator, but similar ice dispenser system. Defendants will produce herewith, to Plaintiffs' counsel, a portion of the claim file received by Whirlpool from Matthew Slife, the claimant in that incident. Both the Slife incident and the notice to Whirlpool of the incident occurred subsequent to the Bunton incident. The total medical expenses for the incident were $388.50, which involved six sutures to the finger of a six-year old boy. Defendants have taken the liberty to redact the contact information for Matthew Slife because Whirlpool is attempting to resolve the claim with the Slife family, and sees no proper purpose in providing contact information to Plaintiffs' counsel.

## CONCLUSION

For the foregoing reasons, the Defendants request that this court deny the plaintiffs' motion to compel.

        Respectfully submitted
        **SEARS, ROEBUCK AND CO., and**
        **WHIRLPOOL CORPORATION**
        By their Attorneys,
        CAMPBELL CAMPBELL EDWARDS &
        CONROY, PROFESSIONAL CORPORATION

        /s/ Steven M. Key
        Richard L. Edwards (BBO# 151520)
        Steven M. Key (BBO# 638145)
        One Constitution Plaza
        Boston, MA 02129
        (617) 241-3000
        redwards@campbell-trial-lawyers.com
        skey@campbell-trial-lawyers.com

        AND

        Robert W. Foster, Jr., Esq. (Admitted Pro Hac Vice)
        Nelson Mullins Riley & Scarborough LLP
        1320 Main Street, 17th Fl.
        Columbia, South Carolina 29201
        (803) 799-2000

## CERTIFICATE OF SERVICE

I, Steven M. Key, certify that on May 19, 2006, a true copy of ***Defendants Sears Roebuck & Co. And Whirlpool Corp.'s Opposition To Plaintiffs' Motion To Compel*** was sent to Glenn Haese by e-mail at ghaese@haese.com and regular mail at Haese, LLC, 70 Franklin St., 9th Floor, Boston, MA 02110

        /s/ Steven M. Key
        Steven M. Key