IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Jasmine D. Bunton, by her legal guardian, Lourenco P. Dossantos, and Lourenco P. Dossantos, | ) | Civil Action No. 04-11633RGS |
| Plaintiffs, | ) | JOINT PRE-TRIAL BRIEF |
| vs. | ) | |
| Sears Roebuck & Co. and Whirlpool Corporation, | ) | Jury Trial Requested |
| Defendants. | ) | |

Pursuant to the Court's Order of September 12, 2006, the parties submit this Joint Pre-Trial Brief.

**DEFENDANTS' POSITION**

This accident was a completely unforeseeable event and the result of misuse of the product. The Bunton accident was the first accident of this type encountered by the Whirlpool Engineering Department. The plaintiff family chose not to hook up the ice maker, so the unit was incapable of producing ice. Instead, the family made ice in trays and dumped the ice into the ice container to be dispensed improperly through the ice dispenser unit. While Jasmine Bunton may have been a foreseeable user of an automatic ice dispensing system refrigerator where the ice maker was properly connected, her conduct of reaching up into the ice dispensing chute with her hand and arm to get ice from an ice maker that was not connected such that it could make ice was an unforeseeable misuse of the product.

**UNDISPUTED FACTS**

The Plaintiff family purchased a Kenmore brand refrigerator from a Sears store in Braintree, Massachusetts. The refrigerator was manufactured by Whirlpool Corporation and contained a water and ice dispensing device. The ice dispenser panel has control buttons that allow the user to dispense crushed ice or ice cubes, activate or deactivate a light, and lock or unlock the ice dispenser. (Boughton Dep. 16:2-14). To retrieve either ice cubes or crushed ice, the user would push a lever and ice will fall through an approximately 8" long chute and into the glass. Whirlpool conducted an internal safety audit on the subject model refrigerator (Boughton Dep. 15:1-3, 18-20), and conducted safety tests as required by Underwriters Laboratory ("UL") (Boughton Dep. 43:8-15). One test includes the insertion into the ice dispenser of an UL articulated probe that simulates a wrist and single finger. The dimensions of the wrist portion are only two and a half inches. (Boughton Dep. 43:8-24; 44:1-9.) The refrigerator contains several other safety features with regard to the ice dispenser including the diameter of the ice chute, the distance between the opening and the ice crusher blades, the flow of ice in the ice chute, and a trap door covering the bottom of the chute. (Boughton Dep. 54:12-24; 55:9-22.) The design of the refrigerator and ice dispensing device met all Whirlpool safety requirements and passed all Underwriters Laboratory's testing procedures (Boughton Report, Ex. 1), which allowed the product to receive the UL sticker.

The Plaintiff family chose not to hook up the water line to the ice maker, so the refrigerator was incapable of producing ice. Instead, members of the Plaintiff family would place ice cubes (made in trays) into the ice container located inside the refrigerator door and use the in-door unit to dispense ice. Mr. Dossantos, the father of Jasmine Bunton, testified

that he was unaware that anyone in the family used the ice dispenser to get crushed ice or that Jasmine knew how to operate the ice dispenser. (Dossantos Dep. 38:11-19; 42:9-18)

This case arises out of an accident that occurred on April 16, 2004 when Jasmine Bunton, who was 8-years-old at the time, reached up into the ice chute on her family's refrigerator in an attempt to get crushed ice and got her hand stuck in the mechanical workings of the ice crusher. When the dispenser would not produce any more ice, she stuck her hand in the chute to see if any ice was in the chute. (Bunton Dep. 28:6-16) Jasmine inserted her hand into the chute to a point midway up her arm until she reached the blades of the ice crusher. (Bunton Dep. 30:16-23.) While her hand was inserted in the chute, the lower portion of her arm around her elbow pressed against the lever which activated the blades and cut her hand. (Bunton Dep. 31:7-17.) Once she felt the blades begin to cut, Jasmine immediately hit the "lock" button on the ice dispenser (Bunton Dep. 42:17-24.), and then called for her grandmother and a cousin. Unable to free her hand, the cousin called the police and Jasmine testified that she talked to the police and told them what happened. (Bunton Dep. 44:6-12.)

The Boston Fire Department arrived at the scene to extricate Jasmine's hand from the ice dispenser. The firemen dismantled the ice dispenser unit in order to disentangle her fingers without further injury. According to the fire department report, the process took approximately one and a half hours. (Fire Dept. Report, Ex. 2.) Although tearful, Jasmine remained calm throughout the process. (Dossantos Dep. 44:14-23.) Jasmine was taken to the emergency room where doctors sutured her cuts. She was later sent to a hand specialist who recommended additional surgery to repair damage to the digital nerve in her left middle and index fingers. Dr. Charles Cassidy performed surgery on Jasmine on May 7, 2004 and a segment of nerve was removed from her left ankle and grafted into her fingers. (See Dr.

Cassidy Operative Report, 5/7/04, Ex. 3.) An additional surgical procedure was performed on October 7, 2004 to remove scar tissue around the area of her left thumb. (See Dr. Cassidy Operative Report, 10/7/04, Ex. 4.) Jasmine Bunton's total medical bills related to this incident to date are $25,177.

## CONTESTED FACTS

There are primarily three factual disputes between the parties. The first is Jasmine Bunton's permanent impairment rating. The second is the cost of future medical procedures for Jasmine Bunton. Third, the amount of Jasmine's potential lost earnings, retirement and fringe benefits.

## ISSUES OF LAW

There are several legal issues involved in this litigation:

1. Whether Jasmine Bunton's actions were foreseeable.
2. Whether the subject refrigerator is defective and unreasonably dangerous.
3. Whether Defendants breached the warranty of merchantability.

The Plaintiff has the burden of proving that she was using the product in a manner that Defendants could reasonably have foreseen. Allen v. Chance Mfg. Co., 494 N.E.2d 1324 (Mass. 1986). Plaintiffs assert that because it is foreseeable that underage children would have access to the kitchen and refrigerator that Defendants should have designed the product against reasonable foreseeable risks arising out of the use of the icemaker and refrigerator. While it is reasonably foreseeable that a child would have access to a kitchen and refrigerator and could possibly use the ice dispenser for properly dispensing ice, it is not reasonably foreseeable that a child would stick her entire arm into the ice chute. Plaintiff's injury was the first of this kind encountered by the Whirlpool Engineering Department. "Massachusetts law,

which controls this case, requires manufacturers to design and produce products with reasonable care to eliminate avoidable dangers arising from reasonably foreseeable uses of the product." Gillespie v. Sears, Roebuck & Co., 386 F.3d 21, 26 (1st Cir. 2004). A plaintiff who uses a product in an objectively unreasonable manner may be barred from recovering. Allen v. Chance Mfg. Co. at 1326; Cigna Insurance Co. v. Oy Saunatec, LTD., 241 F.3d 1, 15 (2001); Colter v. Barber Greene Co., 525 N.E.2d 1305, 1312 (Mass. 1988).

Defendants are not liable for Plaintiff's injury due to the unintended use of the product. "The fact that a seller, manufacturer, or distributor is not liable if a plaintiff is injured as a consequence of his unforeseeable misuse of a product is most properly analyzed as an element of the plaintiff's case, since he must prove that his injury was caused by a defect making the product unfit for its ordinary use." Correia v. Firestone Tire & Rubber Co., 446 N.E.2d 1033, 1041, n. 15 (Mass. 1983). The ordinary purpose and intended use of the ice dispenser unit was to crush ice. The refrigerator at issue was designed to dispense crushed ice from the automatic ice maker into a chute. The Plaintiff family was not using the ice dispenser system as it was designed to be used. Instead of connecting the water line to the refrigerator, the family made ice in ice trays and then placed the ice in the ice container. This was an improper use of the ice dispenser system. Use of the ice maker and dispenser was not the cause of Plaintiff's injury. It was not an intended use that the ice dispenser would be used to dispense ice that was not made in the refrigerator's ice maker. The mere fact that the plaintiff experienced an unexpected event with the product and suffered injury is not sufficient evidence to establish that a defect existed in the product. Walsh v. Atamian Motors, Inc., 406 N.E.2d 733 (1980) (Rescript); Harrod v. Edward E. Tower Co., 194 N.E.2d 392 (1963); Morillo V. Clippard Instrument Laboratories, Inc., 535 N.E.2d 616 (1989).

In breach of warranty actions, Massachusetts has adopted the principles set out in Restatement (Second) of Torts § 402A. Under these principles, Plaintiffs must show that the product was in a defective condition when it left the Defendants' possession. Plaintiffs have no evidence that the subject refrigerator was defectively designed or that a defective condition made the refrigerator unreasonably dangerous. Moreover, the refrigerator was designed to prevent the type of injury that occurred in this case. In addition to several other safety features, the distance from the opening of the ice chute to the crusher mechanism is at least eight inches. Defendants have no duty to design a "risk free" or "risk proof" product. Morrell v. Precise Eng'g, 630 N.E.2d 291 (Mass. App. Ct. 1994). The design of the subject refrigerator avoids reasonably foreseeable risks and is not unreasonably dangerous.

**EVIDENTIARY ISSUES**

Filed herewith are Defendants' three motions *in limine* and memoranda of law concerning evidentiary issues. The motions are:

1) Motion *in Limine* to exclude the Permanent Impairment Report or any testimony related to the report prepared by Plaintiffs' expert witness, Dr. Frank A. Graf.

2) Motion *in Limine* to exclude opinion testimony related to Jasmine Bunton's damages claim for lost earnings capacity, lost fringe benefits, and lost retirement benefits by Plaintiffs' expert economist, Eric Abrams.

3) Motion *in Limine* to exclude testimony or evidence referring to a claim for lack of warning for the subject refrigerator regarding inserting arm into the ice dispenser.

## WITNESSES AND EXHIBITS

DEFENDANTS' WITNESSES:

1. Stephen G. Boughton
   5401 U.S. 41 North
   Department 949, Mail drop 12
   Evansville, Indiana 47727

2. Edward A. Nalebuff, M.D.
   Hand Surgical Associates
   125 Parker Hill Avenue
   Boston, MA 02120-3295

3. Dr. Charles Cassidy
   Chief, Division of Hand and Upper Extremity Surgery
   New England Medical Center
   750 Washington Street
   Boston, MA 02111

## DEFENDANTS' EXHIBITS:

1. Report of Boston Fire Department of 4/16/04.
2. Sears Repair Parts List, Bates No. 000001 - 000012.
3. Whirlpool Product Approval Report, Bates No. 000218 - 000233.
4. UL/CSA Test Report, Bates No. 000234 - 000248.
5. NAR Product Safety Audit, Bates No. 000249 - 000273; Bates No. 000274 - 000388.
6. Photographs of refrigerator and ice dispenser

## OTHER QUESTIONS FOR THE COURT

Defendants are unaware of any other issues to be brought before the Court during the pre-trial conference.

Respectfully submitted

**SEARS, ROEBUCK AND CO., and WHIRLPOOL CORPORATION**
By their Attorneys,
CAMPBELL CAMPBELL EDWARDS & CONROY, PROFESSIONAL CORPORATION

*/s/Richard L. Edwards*

Richard L. Edwards (BBO# 151520)
Christopher B. Parkerson (BBO# 662952)
One Constitution Plaza
Boston, MA 02129
(617) 241-3000
redwards@campbell-trial-lawyers.com
cparkerson@campbell-trial-lawyers.com

AND

Robert W. Foster, Jr., Esq. (Admitted Pro Hac Vice)
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Fl.
Columbia, South Carolina 29201
(803) 799-2000

**CERTIFICATE OF SERVICE**

I, Richard L. Edwards, certify that on October 10, 2006, a true copy of this pleading was sent by first-class mail, postage prepaid to Andrew J. Tine, Haese, LLC, 70 Franklin Street, 9th Floor, Boston, MA 02110.

*s/s/Richard L. Edwards*
Richard L. Edwards