IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Jasmine D. Bunton, by her legal guardian, Lourenco P. Dossantos, and Lourenco P. Dossantos,<br><br>           Plaintiffs,<br><br>vs.<br><br>Sears Roebuck & Co. and Whirlpool Corporation,<br><br>           Defendants. | Civil Action No. 04-11633RGS<br><br>MOTION IN LIMINE AND MEMORANDUM OF LAW TO EXCLUDE OPINIONS OF DR. GRAF |

Defendants Sears Roebuck & Co. ("Sears") and Whirlpool Corporation ("Whirlpool") (hereinafter "Defendants") hereby move the Court for an Order *in Limine* to exclude the Permanent Impairment Report or any testimony related to the report prepared by Plaintiffs' expert witness, Dr. Frank A. Graf, on the ground that under Federal Rule 402 the impairment rating in Dr. Graf's report is premature and, therefore, inaccurate.

## FACTUAL BACKGROUND

This case arises out of an accident that occurred on April 16, 2004, when then 8-year-old Jasmine Bunton reached up into the ice chute on her family's refrigerator in an attempt to get crushed ice. When the ice dispenser would not produce any more crushed ice, Jasmine stuck her hand in the ice chute to see if any ice was in the chute (Bunton Dep. 28: 6-16). While Jasmine's hand was inserted up in the ice chute, the lower portion of her arm or elbow pressed against the lever, which activated the ice crushing blades, and cut her hand

1

(Bunton Dep. 31:7-17). Jasmine was taken to the emergency room at the local hospital and sutures were applied to the cuts. She was later sent to a hand specialist who recommended additional surgery to repair damage to the digital nerve in her left middle and index fingers. The surgery was performed on May 7, 2004 and a segment of nerve was removed from her left ankle and grafted into her fingers. An additional surgical procedure was performed on October 7, 2004 to remove scar tissue around the area of her left thumb.

Dr. Charles Cassidy is the hand specialist that performed the surgeries on Jasmine Bunton. Dr. Graf is the expert from Portsmouth, New Hampshire, hired by Plaintiffs for purposes of this lawsuit. Dr. Graf is an orthopedic surgeon, and has never performed any type of nerve graft surgery. (Graf Dep. 47:20-22.) Despite the lack of expertise in the area of nerve graft surgery, Dr. Graf prepared a report issuing an impairment rating for Jasmine Bunton.[1] Defendants anticipate that Plaintiffs will seek to admit into evidence Dr. Graf's opinion regarding the permanent impairment rating for Jasmine's injury. Dr. Graf's report and opinions were prepared well before growth from the nerve graft was completed, and well before Jasmine reached maximum medical improvement. Therefore, Dr. Graf's report and opinions regarding permanent impairment are inaccurate, unreliable and should be excluded.

## ARGUMENT

I. **DR. GRAF'S PERMANENT IMPAIRMENT REPORT AND OPINIONS SHOULD BE EXCLUDED.**

    A. <u>Graf Impairment Evaluation is Premature.</u>

---

[1] In his written report, Dr. Graf determined Jasmine Bunton had permanent 24% whole person impairment from the injury to two fingers. During his deposition, Dr. Graf recognized he had made a mistake, and reduced his permanent impairment rating to 16% whole person. "Q: So essentially this 24 percent that you have for the whole person is really, you would modify that to be 16 percent? A: 16 percent." (Graf Dep. 81:3-6.)

2

Under the Federal Rules of Evidence it is clear that "evidence which is not relevant is not admissible." Fed. R. Evid. 402. Dr. Graf issued a report finding a permanent impairment rating for Jasmine Bunton. However, Dr. Graf's report is premature and does not account for further healing of Jasmine's injuries that make his report unreliable and inaccurate for purposes of determining the extent of permanent nerve damage to Jasmine's fingers. Dr. Graf's opinion essentially is that as of June 22, 2005, Jasmine Bunton had reached the "medical end point" in her recovery from nerve graft surgery performed on May 7, 2004. His report is based on his "independent medical evaluation" performed on Jasmine Bunton on June 22, 2005, approximately 13 months after her surgery. His evaluation was his one and only examination of Jasmine Bunton, and lasted less than two hours. (Graf Dep. 11: 1-5, 13-19.)

Dr. Graf's opinion of permanent impairment was made 13 months after Jasmine's first surgical procedure. Dr. Graf opined, based on a "rule of thumb" regarding re-growth of nerves, that as of the date of his examination, Jasmine's recovery was complete and she would not experience any additional growth to the nerves in her hand. (Graf Dep. 41:18-21.)

> Q. Is it your opinion that a child of about Jasmine's age would reach full maximum improvement following a nerve graft within this one year, one month period?
>
> A. Yes. Now, the patient can always be reassessed to check that prediction, but that would be my feeling that she has achieved the benefit that she's going to achieve and that there's not going to be any significant improvement.

(Graf Dep. 43:21-23; 44:1-6.)

> Q. What is your basis for concluding that a patient like Jasmine who received a nerve graft to a digital area of her hand would reach maximum medical improvement in one year and one month from the surgery; what's the basis of that?

> A.   My knowledge and experience and study of this issue.
>
> Q.   It's your opinion that you could not believe that Jasmine Bunton will reduce her sensory deficits at all since the date of your examination?
> A.   That's correct.

(Graf Dep. 51:22-23; 52:1-9.)

Dr. Graf's opinion regarding Jasmine's recovery is contrary to all the medical literature, and contrary to the opinions of the two hand surgeons who have testified in this case. Dr. Graf is not qualified in the area of nerve graft surgery. Although he is an orthopedic surgeon, he freely admitted in his deposition that he has not received specialized training as a hand surgeon, nor has he ever performed nerve graft surgery of any type. (Graf Dep. 47:20-22.) His assessment of her recovery is based on a personal belief that nerve re-growth in a child would be complete in one year. The two nerve graft experts who have testified in this case disagree with Dr. Graf's theory regarding the normal time to allow for nerve re-growth. Dr. Edward Nalebuff is a hand surgeon retained by defendants, who conducted an independent medical examination of Jasmine Bunton on March 15, 2005. In Dr. Nalebuff's expert opinion, Dr. Graf's assessment was premature. "Based on the medical literature, my experience, and Dr. Cassidy's subsequent examination of Jasmine Bunton . . ., I am certain that she would not have reached an end result by June 2005, three months after my examination of her." (Nalebuff Aff. ¶ 4, Ex. 1.) Dr. Nalebuff testified that it takes at least two years to recover from nerve graft surgery.

> Q.   What's a Schwann cell?
>
> A.   These are the nerve cells, and the nerves come from Schwann cells and they have to be covered by something called myelin. This all takes time. The nerve may actually grow out, and then it takes time for myelin to make it, to mature. Just the fact that you have some growth out there

4

> doesn't mean that the nerve is matured. It has to first grow and then it gets covered with myelin.
>
> \*\*\*
>
> Q. These doctors also say "Schwann cell tubes remain viable for 18 to 24 months after injury."
>
> A. Okay.
>
> Q. Do you agree with that?
>
> A. Yeah. In other words, that the tubes stay open for a couple of years. That's probably right. . . . I've always felt that you don't get an end result for probably two years.

(Nalebuff Dep. 16:12-20; 17:22-24; 18:1-6.)

At the time of his examination of Jasmine, Dr. Nalebuff opined that the nerves in her fingers were recovering properly and by the next year "sensation will extend to the tips." Ten months later, in January 2006, Dr. Nalebuff testified that Jasmine was not at an end point in her recovery.

> Q. I examined her and I noticed sensation out to the distal joint, so I know that from, between the time of surgery of May, she went from here which she had nothing to here. By March she was here, so I assume that, I would think that the following year she would be out to the tip. Now, once the nerve grows back there, then you might have sensation, but then you have the additional thing of reeducation because a child is going to use this and reinstitute, reeducate the brain. So if you want to say how much can you get out of nerve repair? About two years, but then after that will you continue to improve? Absolutely, because you've got a child with reeducation, the brain interpreting these impulses coming up.
>
> So she's not an end result, and really my personal opinion is that it's not fair to her or to anyone else to consider her an end result at this stage. She's going to get better and she is not an end result yet.

(Nalebuff Dep. 22:4-24; 23:1.)

According to Dr. Nalebuff, the nerve re-growth process in children continues longer and is more successful than in adults. (Nalebuff Aff. ¶ 4.)

5

> Q. And they say "the result of a nerve repair is unpredictable" and "nerves never recover fully after being cut. The best that can be achieved is a 90 percent recovery."
>
> A. Again, you have to take into consideration the fact of the age of the patient. When you do a nerve repair on someone over the age of 16, I would tend to agree with that, but under the age of 10, the results are completely different in a child than they are in an adult. It's just a different, different thing. A child makes the surgeon look very good. Okay.
>
> Q. They also go on to say "recovery is very slow, taking months or years."
>
> \*\*\*
>
> A. I think you've relied on some people that are writing about general and do not really apply to this particular case. We're talking about somebody with a sensory nerve. We're talking about a short graft. We're talking about somebody eight-years old. It is a different ball game.

(Nalebuff Dep. 20:8-21; 21:5-10.)

Dr. Charles Cassidy is the orthopedic surgeon that performed the nerve graft surgery on Jasmine Bunton. Dr. Cassidy performed the nerve graft surgery on Jasmine on May 7, 2004. (Cassidy Dep. 6:2-10.) Dr. Cassidy testified that it takes at least two years for nerve repairs to reach full recovery, and opined that it is possible for improvement to continue beyond two years.

> Q. Do you anticipate that there may be any change in that condition over time?
>
> A. <u>The conventional teaching is that the nerve repairs recover over the course of about two years</u>. So she's approaching two years. The atrophy of the pulp is <u>an indicator of incomplete nerve recovery, and so she has a few more months to recover</u>. I anticipate it won't be normal.
>
> Q. Why is that, sir?
>
> A. Because she's close to the two-year mark.
>
> Q. Is it possible that there is improvement beyond the two-year mark, that there may be improvement beyond the two-year mark?

6

> A. It is possible.
>
> Q. Is it particularly possible with children as opposed to adults?
>
> A. I believe that the two-year-a two-year end point holds for both. Although, in general, children tend to do better than adults with nerve repairs.

(Cassidy Dep. 24:14-24; 25:1-9) (emphasis added).

Dr. Cassidy conducted an examination of Jasmine Bunton on June 16, 2006, one year after Dr. Graf's examination. At the time of his examination, Dr. Cassidy opined that it was still possible that Jasmine's recovery could progress further.

> Q. Do you believe that Jasmine Bunton presently is at a medical end point with regard to the effects of this surgery-or excuse me, of this incident?
>
> A. Well, with respect to the nerve recovery, she is almost at an end point, I would say, within the next few months.

(Cassidy Dep. 29:9-15) (emphasis added).

Dr. Cassidy's deposition testimony is based on his physical examination of Jasmine of June 16, 2006, one year after Dr. Graf's examination. At the time of the Cassidy examination, Jasmine was "almost at an end point." Based on the opinions of the two hand surgery experts, Dr. Graf's Permanent Impairment Report based on his examination 13 months after surgery is premature. According to Dr. Cassidy's estimate, Jasmine had almost another year of recovery beyond Dr. Graf's examination before a true rating could be established, and even when he examined her a year later there was still the possibility of additional improvement. Dr. Graf's premature report establishes an inaccurate permanent impairment rating and should be excluded.

    B.    <u>**Graf Impairment Evaluation is Contrary to Actual Evidence of Additional Recovery.**</u>

Dr. Graf asserted in his report that as of June 22, 2005, Jasmine Bunton had reached a medical end point in her recovery. However, the medical evidence reveals a completely different assessment of Jasmine's recovery. When Jasmine was examined by Dr. Nalebuff in March 2005, he tested her ability to distinguish pin pricks on her fingers. The test is a standard two-point discrimination test that measures the distance the person can differentiate between two pin pricks and one pin prick. Dr. Nalebuff determined that Jasmine had good two-point discrimination to a separation of about 6 millimeters between the test pins over the major portion of her affected index and middle fingers, and only very light touch perception in the plananges, or tips, of those fingers. This indicated to Dr. Nalebuff that Jasmine was regaining sensation, but that it had not grown to the tips of her index and middle fingers. (Nalebuff Aff. ¶ 3-4.)

Dr. Cassidy, the surgeon who performed Jasmine's nerve graft surgery, examined Jasmine in June 2006; 13 months after Dr. Nalebuff examined her. Dr. Cassidy found that Jasmine's two-point discrimination had improved at the tips of her index and middle fingers to the point she could determine two pins from one to a separation of approximately 7 to 8 millimeters, which indicated additional nerve growth during the second year of recovery.

Q. Did you also test, sir, her loss of sensation?

A. Yes.

Q. What did you observe there, sir?

A. Specifically, evaluated her light touch and two-point discrimination. Her light touch was altered in the affected digits. Her two-point discrimination was 8 millimeters on the radial aspect of the index finger and middle finger and 7 millimeters along the ulnar aspect of the index finger and middle finger versus 3 to 4 millimeters of the little finger.

> Q. And, sir, this two-point discrimination that you described was measured at 8 millimeters on the radial aspect of the index and middle finger all the way out to the tip of the finger?
>
> A. Yes.
>
> Q. And also 7 millimeters on the ulnar aspect of the index and middle finger to the tip; is that correct?
>
> A. Yes.

(Cassidy Dep. 21:7-24; 22:1-3.)

Based on the medical evidence established by Dr. Cassidy's most recent examination, Jasmine continued to improve after Dr. Nalebuff and Dr. Graf examined her. By the time Dr. Cassidy examined her a year later, she had improved from "light touch" sensation in the tips of her affected fingers to the ability to differentiate pin pricks to 7 to 8 millimeters in the tips of her fingers. In addition, Dr. Nalebuff and Dr. Cassidy opined that because of her young age, it was possible for Jasmine to continue to improve.

> Q. Is it possible that there is improvement beyond the two-year mark, that there may be improvement beyond the two-year mark?
>
> A. It is possible.

(Cassidy Dep. 24:24; 25:1-3.)

Accordingly, Dr. Graf's opinions are simply wrong for two reasons. First, his evaluation is premature and does not take into account the possibility, and probability, of continued improvement beyond 13 months after her surgical procedure. Second, the medical evidence establishes that Jasmine Bunton <u>did</u> continue to recover and improve after Dr. Graf's evaluation.

## CONCLUSION

For the above-stated reasons, Defendants request that Dr. Graf's report offering a Permanent Impairment Rating for Jasmine Bunton or any testimony about Dr. Graf's report be excluded from trial.

[SIGNATURE BLOCK ON NEXT PAGE]

Respectfully submitted,

**SEARS, ROEBUCK AND CO., and
WHIRLPOOL CORPORATION**
By their Attorneys,
CAMPBELL CAMPBELL EDWARDS &
CONROY, PROFESSIONAL CORPORATION


*/s/ Richard L. Edwards*
Richard L. Edwards (BBO# 151520)
Christopher B. Parkerson (BBO# 662952)
One Constitution Plaza
Boston, MA 02129
(617) 241-3000
redwards@campbell-trial-lawyers.com
cparkerson@campbell-trial-lawyers.com

AND

Robert W. Foster, Jr., Esq. (Admitted Pro Hac Vice)
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Fl.
Columbia, South Carolina 29201
(803) 799-2000