IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Jasmine D. Bunton, by her legal guardian, Lourenco P. Dossantos, and Lourenco P. Dossantos,<br><br>       Plaintiffs,<br><br>vs.<br><br>Sears Roebuck & Co. and Whirlpool Corporation,<br><br>       Defendants. | Civil Action No. 04-11633RGS<br><br><u>MOTION IN LIMINE AND MEMORANDUM OF LAW TO EXCLUDE OPINIONS OF LOST FUTURE EARNING CAPACITY</u> |

Defendants Sears Roebuck & Co. ("Sears") and Whirlpool Corporation ("Whirlpool") (hereinafter "Defendants") respectfully move the Court for an Order *in Limine* prohibiting any opinions related to Jasmine Bunton's damages claim for lost future potential earning capacity.

FACTUAL BACKGROUND

This case arises out of an accident that occurred on April 16, 2004, when then 8-year-old Jasmine Bunton reached up into the ice chute on her family's refrigerator in an attempt to get crushed ice. When the ice dispenser would not produce any more ice, Jasmine stuck her hand in the ice chute to see if any ice was in the chute (Bunton Dep. 28: 6-16). While Jasmine's hand was inserted up in the ice chute, the lower portion of her arm pressed against the lever, which activated the ice crushing blades and cut her hand (Bunton Dep. 31:7-17). Jasmine was taken to the emergency room at the local hospital and sutures were applied

to the cuts. She was later sent to a hand specialist who performed additional surgery to repair damage to the digital nerve in her left middle and index fingers by grafting a segment of nerve from her left ankle into her fingers.

Plaintiffs' economic expert opined that Jasmine Bunton has a permanent injury that will result in future lost earnings capacity, lost fringe benefits, and lost retirement benefits. Economist Eric Abrams prepared a report providing "An Assessment of Economic Damages" for Jasmine Bunton. Because Mr. Abrams report is speculative and based on an incorrect medical rating, his opinions are unreliable and should be excluded.

## ARGUMENT

Plaintiff's total past medical bills in this case is only about $25,000. One of the major components of Plaintiffs' claimed damages in this matter is for loss of earning capacity. "Lost and future earnings are at best speculative." Hewitt v. U.S., 550 F. Supp. 589, 591 (D. Mass.). In this case, plaintiffs' evidence as to future loss earning capacity is entirely speculative, and based on an erroneous medical assessment. "In tort actions, loss of earning capacity is an economic concept based upon a medical foundation. A plaintiff has the burden of proving his claimed loss of earning capacity." Quinones-Pacheco v. American Airlines, Inc., 979 F.2d 1, 6 (1st Cir. 1992). Under Massachusetts law, for actions involving minors, evidence of the nature and permanence of disability may be considered to determine the extent of impairment of earning capacity. See Cross v. Sharaffa, 183 N.E. 838 (Mass. 1933). Mr. Eric Abrams was retained by plaintiffs to provide an economic damage analysis. However, Mr. Abrams' opinion is based on an incomplete medical foundation and an erroneous permanent impairment rating.

Mr. Abrams testified that the most important piece of information he utilized for his analysis was Dr. Frank Graf's initial report which rated a "whole person permanency of 24%."[1] (Abrams Dep. 8:11-15.)

> Q. And whatever information you have about Jasmine Bunton, it is limited to a letter or report that you received from Dr. Graf, correct?
>
> A. Correct.
>
> Q. Okay. I mean, it goes without saying that you've never seen Jasmine Bunton, correct?
>
> A. That's correct.
>
> Q. Have you ever seen any photographs of her hand?
>
> A. No.
>
> Q. Okay. Have you read any depositions or witness statements or anything of that nature?
>
> A. I've read a few pages of the original complaint, but that's the extent of it.
>
> Q. All right. And your categorizing Jasmine Bunton as falling into the nonsevere disability table is based entirely on Dr. Graf's report and conclusions; is that correct?
>
> A. That's correct.
>
> Q. And would you agree that if Dr. Graf's reports and percent of total whole-person impairment is inaccurate, that your report might be inaccurate?
>
> A. Might be, yes.

(Abrams Dep. 16:5-25, 17:1-3.)

---

[1] Defendants have filed a separate motion *in limine* to exclude the report prepared by Dr. Graf as premature and therefore inaccurate and inadmissible.

3

After Mr. Abrams prepared his report and gave his deposition, Dr. Graf issued an Amended Permanent Impairment Report on October 27, 2005, changing his prior impairment rating reducing it from 24% whole person impairment to 16% whole person impairment. The revision to Dr. Graf's report, in addition to the possibility that the report may be deemed inadmissible, makes Mr. Abrams' analysis fatally flawed.

Based on Dr. Graf's report and admitted incorrect impairment rating, Mr. Abrams presumed that there would be certain types of jobs that Jasmine might be unable to perform at the time she reached the age of employment.

> Q. And you don't know whether Jasmine Bunton can actually perform these functions as employment when she reaches employment age, do you?
>
> A. Well, based on what I read in Dr. Graf's report, for example, it's unlikely she's going to be a surgeon, so some of those jobs I have little doubt that she could not do.
>
> Q. But there are some jobs in here that she may very well be able to perform as she grows older; would that be fair to say?
>
> A. I don't know.
>
> ***
>
> Q. You don't know one way or the other whether she would be precluded from doing any of these job occupations when she reaches age; is that correct?
>
> A. Assuming her finger and manual dexterity stays where it is, based on Dr. Graf's report she can't do these.

(Abrams Dep. 14:14-25, 15:10-16.)

Mr. Abrams' assessment is purely speculative and premature. He never looked at the medical records of the surgeon who performed the surgeries on Jasmine and had no idea what Jasmine's specific injuries were. (Abrams Dep. 23:11-25, 24:1-7.) His assumptions are based on a report produced only one year after nerve graft surgery was performed on

4

Jasmine's fingers and does not account for continued recovery as Jasmine gets older.[2] Dr. Edward Nalebuff, a hand surgeon who examined Jasmine Bunton on March 15, 2005, testified that she could be a surgeon if she so chose—one of the jobs listed by Mr. Abrams as a potential lost opportunity due to her injuries.

> Q. Do you think an injury like this, the one that you analyzed with respect to her would stop her from being a hand surgeon if that was her operating hand?
>
> A. I don't think so.
>
> Q. You don't think so?
>
> A. No.
>
> Q. And –
>
> A. The reason for that?
>
> Q. Yeah. Go ahead.
>
> A. We operate with gloves. When we do any surgery, we used to put one pair of gloves on. Now because of HIV we put two pairs of gloves on. We don't have much two point discrimination when you have two gloves on. You have to have dexterity. She has all of that. Her tendon function is normal. Her joints are flexible. She's able to oppose her thumb. She has good dexterity. She certainly could be a surgeon if she had the education.

(Nalebuff Dep. 27:21-24, 28:1-15.)

Not only is Mr. Abrams' assessment based on a flawed medical analysis by Dr. Graf, his calculations encompass Jasmine's entire work life expectancy with the assumption that there will be no improvement in her condition. His analysis does not consider that

---

[2] See Motion *in Limine* to exclude Graf report because Jasmine's recovery has improved since Dr. Graf evaluated her.

Jasmine Bunton could be employed in a profession that does not require high finger and manual dexterity and therefore she would not have any lost earning capacity.

> Q. Even though we may debate her level of finger impairment, if she were to get employed with a job that didn't matter what her finger impairment was, then she would have no economic loss here; is that correct?
>
> A. Yes.

(Abrams Dep. 38:21-25, 39:1.)

The First Circuit has held that to claim loss of earning capacity, a plaintiff "must offer evidence from which a jury may reasonably determine the annualized stream of income that the plaintiff, uninjured, would probably have earned, and contrast it, over the period of proven disability, to a similar forecast of what the injured plaintiff's earnings are likely to be." Quinones-Pacheco at 6-7 (not allowing an economist's testimony on lost earning capacity because there was no medical evidence that plaintiff was totally disabled and no evidence that plaintiff could not participate in any gainful employment, both of which the economist's analysis relied upon); see also Anthony v. G.M.D. Airline Svcs., 17 F.3d 490, 493-494 (1st Cir. 1994) (not allowing damages for future wages because there was insufficient evidence to show that plaintiff cannot work due to the injury). Mr. Abrams offers no evidence that Jasmine will be unable to engage in gainful employment as an adult, and cannot state definitively that Jasmine will have any economic damages.

> Q. Are you saying that you don't think your report is predicting into the future?
>
> A. I think it is comparing different scenarios based on possible futures.
>
> Q. Well, isn't it true that since you do not know what this 9-year-old girl is going to be doing for a living at the time she turns 22 years old, you do not know whether or not this finger injury will have any economic impart on her earning capacity? Is that fair?

6

    A.    Given that we don't know exactly what she is going to do when she is 22, yes, I don't know if there will be with certainty economic damages.

(Abrams Dep. 41:1-14.)

Plaintiffs have no evidence that Jasmine will lose any earnings from future employment and cannot prove lost opportunities due to the specific nature of her injuries. "Absent evidence of the extent and likely duration of a plaintiff's claimed disability, what other work he can perform betimes, and what he can earn in such pursuits, a trial court may appropriately exclude evidence of the losses stemming from the plaintiff's alleged inability to do a particular job." Quinones-Pacheco at 7. Accordingly, Jasmine Bunton's damages claim for lost earning capacity should be excluded.

## CONCLUSION

For the above-stated reasons, Defendants request that information and testimony related to Jasmine Bunton's damages claim for lost earnings capacity, lost fringe benefits, and lost retirement benefits be excluded from trial.

    Respectfully submitted

    **SEARS, ROEBUCK AND CO., and**
    **WHIRLPOOL CORPORATION**
    By their Attorneys,
    CAMPBELL CAMPBELL EDWARDS &
    CONROY, PROFESSIONAL CORPORATION

    */s/ Richard L. Edwards*
    Richard L. Edwards (BBO# 151520)
    Christopher B. Parkerson (BBO# 662952)
    One Constitution Plaza
    Boston, MA 02129
    (617) 241-3000
    redwards@campbell-trial-lawyers.com
    cparkerson@campbell-trial-lawyers.com

    AND

Robert W. Foster, Jr., Esq. (Admitted Pro Hac Vice)
Nelson Mullins Riley & Scarborough LLP
1320 Main Street, 17th Fl.
Columbia, South Carolina 29201
(803) 799-2000