# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASMINE D. BUNTON, BY HER LEGAL ) <br> GUARDIAN, LOURENCO P. ) <br> DOSSANTOS, and LOURENCO P. ) <br> DOSSANTOS, ) <br> ) <br>     PLAINTIFFS, ) <br> ) <br> v. ) <br> ) <br> SEARS ROEBUCK AND CO. et al., ) <br> ) <br>     DEFENDANT. ) <br> ) | CIVIL ACTION NO.: 04-CV-12369-NG |

## JOINT PRETRIAL MEMORANDUM

Pursuant to the Order of the Court, Plaintiffs and Defendants respectfully submit this

Joint Pretrial Memorandum, each reserving the right amend the same upon reasonable notice.

1. **Trial Counsel**:

Plaintiffs:

| | A. | J. Anthony Penry <br> Taylor, Penry, Rash & Riemann, LLC <br> 510 Glenwood Avenue, Suite 319 <br> Raleigh, NC 27603 <br> Tel. (919) 833-9449 | B. | Glenn H. Haese <br> Haese, LLC <br> 85 Devonshire Street, 6th Fl. <br> Boston, MA 02109 <br> Tel. 617 428 0266 |
|---|---|---|---|---|

Defendants:

| | A. | Richard L. Edwards <br> Campbell, Campbell, Edwards and Conroy <br> One Constitution Plaza, Third Floor <br> Boston, MA 02129 <br> Tel: (617) 241-3000 | B. | Robert W. Foster <br> Nelson Mullins <br> 1320 Main St, 17th Floor <br> Columbia, SC 29201 <br> Tel: (803) 255-9414 |
|---|---|---|---|---|

2.    **Case to be Tried by Jury**: Yes.

3.    **Plaintiffs Summary of the Case**:  A faulty design, failure to warn, and/or negligence on the part of the Defendants caused Jasmine Bunton's injuries and Jasmine and Lourenco Dossantos' resulting in emotional distress.

On April 16, 3004, Jasmine Bunton was in her home at 78 Sumner St., Dorchester.  She was eight years old.  She went to her kitchen to gather ice from an icemaker.  The dispenser to the icemaker was located in the door of a Whirlpool model refrigerator, sold at a Sears store.

When no ice dispensed from the icemaker, she attempted to gather ice by sliding her hand up the dispenser chute.  Jasmine's arm depressed the activation lever, normally depressed by a glass, and activated the icemaker.  Because the icemaker was in a mode for dispensing crushed ice, blades normally used for crushing ice activated and engaged, slicing into and embedding into Jasmine's hand.  Jasmine managed to stop the unit and summon help from family members in the house, who called emergency services.  Jasmine was unable to extract her hand and remained stuck in the icemaker.

The first crew to arrive at the scene, a fire engine company, was unable to extract Jasmine.  They summoned a rescue crew who worked to disassemble the freezer door to free Jasmine from the device.  This extraction took some time (at least an hour), during which time Jasmine's father, Lourenco Dossantos, witnessed his daughter crying in pain.  Once freed from the icemaker, Jasmine was rushed to Boston Medical Center for treatment, including sutures and painkillers.  Later, upon reporting that she had no feeling in parts of her hand, Jasmine was referred to the Tufts-New England Medical Center, where she has so far, undergone two separate surgeries, including a nerve graft, to repair nerves and damaged or scarred skin. At least two

–2–

more surgeries are either scheduled or expected. Jasmine's hand will never look the same and her hand will never fully regain complete feeling, or motor function.

B.    RELEVANT PROCEDURAL HISTORY.

The initial complaint, dated October 5, 2004, was amended, and the operative complaint alleges negligence, breach of warranty and emotional distress as to Lourenco Dossantos and Jasmine Bunton. After discovery, each party moved for summary judgment. Both motions were denied. The case is scheduled to proceed for jury trial on or about October 30, 2006.

C.    LEGAL THEORY.

The Plaintiffs' basic theory of the case and the likely most contested issue is that the icemaker was designed or manufactured and/or set up such that the reasonably foreseeable use by a foreseeable user, such as, Jasmine Bunton's attempt to dispense ice resulted in injury. Defendants are liable on the theories of failure to warn or defective design under a breach of warranty standard, or alternatively, Defendant were negligent. Plaintiffs will prove that Jasmine Bunton, in addition to being a foreseeable user of the icemaker, used the Whirlpool icemaker in a reasonably foreseeable manner, and that such use and resulting injury constitutes a breach of warranty or negligence, and further that such actions caused emotional distress as to Jasmine and Lourenco Dossantos, Jasmine's father, as a bystander. The actions of Sears and/or Whirlpool proximately caused Plaintiff's injuries and damage.

4. **Defendants' Summary of the Case:**

5. **Facts:**

a. On June 29, 2003, the Dossantos/Bunton family purchased a "Kenmore" refrigerator at a Sears Roebuck store in Braintree, Massachusetts.

b. The refrigerator was sold under the Kenmore label by the Defendant Sears, Roebuck and was designed and manufactured by the Defendant Whirlpool Corporation.

c. The product has not been substantially altered.

d. This refrigerator model has an ice maker in the freezer door that is activated by pushing a lever in the door of the refrigerator.

e. The refrigerator was installed by Sears's representatives at Jasmine's house. Although the water hose was never connected to the ice maker, it was fully operational.

f. On or about April 16, 2004, the then 8 year old Plaintiff Jasmine tried to dispense ice from the ice maker; when no ice fell out, she reached up into the chute with her left hand in an attempt to free up an ice jam.

g. With her hand placed in the ice dispenser chute, her forearm pressed against the lever, activating the internal mechanism; the hidden ice crusher blades started to rotate and lacerated her hand.

h. With her other hand, Jasmine was able to push the "lock" button on the display panel and was therefore able to stop the operation of the blades.

i. Family members called a rescue team that was able to free Jasmine.

j. Jasmine's hand was caught in the machine for over an hour.

k. After emergency treatment it was discovered that the accident had caused digital nerve injuries. Jasmine had to undergo additional surgery involving nerve grafting from her left ankle that left visible scarring on her leg.

l. Jasmine will never regain full use of her hand.

m. At least one additional accident with the same subject ice maker has occurred.

5. **Contested Issues of Fact**:

    A. Whether Jasmine's use of the Icemaker Was Reasonably Forseeable;

    B. Whether the Icemaker was Defectively Designed;

    C. The Amount and Extent of Jasmine Bunton's Physical Impairment.

6. **Jurisdictional Issues**: None.

7. **Issues of Law/Plaintiffs**:

The complaint asserts theories of breach of warranty, negligence, and emotional stress. The Plaintiffs do not expect any conflict among the parties as to what law is applicable or that this case presents a novel issue of law; the Plaintiffs, instead, expect that each of these three issues will be contested as to their application, and therefore offers its brief summary of each issue of law.

    A.    <u>Breach of Warranty</u>.

The Plaintiff Jasmine Bunton alleges she is entitled to recover based upon a breach of warranty from both a defective design and a failure to warn. "The public has a right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those that market them. . . ." (Citations Omitted; Internal Quotation Marks Omitted.) <u>Haglund v. Phillip Morris, Inc.</u>, 446 Mass. 741, 746, 847 N.E.2d 315 (2006). Warranty theory in Massachusetts is identical in almost all respects to strict liability theory contained in the Restatement (2d) of Torts § 402A. See, e.g., <u>Allen v. Chance Mfg co.</u>, 398 Mass. 32, 34, 494 N.E.2d 1324 (1986). Unlike

negligence theory, discussed *infra*, "warranty liability focuses on whether the product was defective and unreasonably dangerous and not on the conduct of the user or the seller." (Citations Omitted; Internal Quotation Marks Omitted.) Colter v. Barber-Greene Co., 403 Mass. 50, 61-62, 525 N.E.2d 1305 (1988).

        1.    Defective Design

The Plaintiff alleges that the Plaintiff's use of the icemaker was foreseeable, based upon her and other children's uses and upon the Defendants' expert testimony. The Plaintiff also alleges and will prove that the Defendant did not design against such foreseeable use and the associated dangers of that foreseeable use and, therefore, asserts that Defendants are liable based upon defective design.

The Defendant should be held liable in this case for a defective design if the "design choices fail to anticipate the reasonably foreseeable risks of ordinary use." (Internal Quotation Marks Omitted.) Back v. Wickes Corp., 375 Mass. 633, 640, 642, 378 N.E.2d 964 (1978). The Plaintiff must prove that the injury was reasonably foreseeable, that the design created unreasonable danger, and that the design caused the injury. See, e.g. Caro v. General Motors Corp., 37 Mass. App. Ct. 744, 753, 643 N.E.2d 471 (1994). The key question in affixing liability in this case, then, is the determination of ordinary use.

There is no real question as to other elements of the defective design theory. The Defendant manufactured or alternatively sold the product; the Plaintiff is a member of a household where an icemaker exists and is, therefore, a foreseeable user; and the icemaker caused Jasmine's injury. The question of liability, therefore, rests on whether Jasmine's use of the icemaker was reasonably foreseeable. The Plaintiffs will prove that Jasmine's attempt to

clear what she thought was a jam in the icemaker was a reasonable reaction; that other children have used the icemaker in a similar fashion, and other facts that tend to prove that Jasmine's use of the icemaker was foreseeable and, therefore, that the Defendants are liable for Jasmine's injury.

2.    Failure to Warn.

The Plaintiffs also seek to hold the Defendants liable under the alternative theory of failure to warn, as a breach of warranty; specifically, that a dangerous condition existed that the Plaintiff had no way to know about as a matter of course, hidden from view or discovery, and that the Defendants did not adequately warn against the dangerous condition thus, establishing their liability for Jasmine's injuries.

Warnings must be comprehensible and commensurate with the danger involved, and may be imposed even when there is no negligence in design or manufacture. Lapeeri v. Sears Roebuck & Co., 787 F.2d 726, 729 (1st Cir. 1986).

Here, the Defendants do not contest that there was no warning on the icemaker. They do contest, however, that a dangerous condition existed that mandated a warning. Jasmine's conduct in attempting to free what she thought was a jam in the icemaker, and the view of the trier of fact on whether that conduct was reasonably foreseeable, becomes paramount. If Jasmine's use of the icemaker was reasonably foreseeable, then it follows that a dangerous condition existed—namely, that a child could reach into the icemaker while simultaneously activating the crushing blades, exposing herself to injury. The Defendants would, then, be subject to providing a warning against such danger. Their liability under the failure to warn theory would then be adequately established.

B.    <u>Negligence</u>

"[N]egligence requires a duty, breach of that duty, "but for" and proximate causation of harm, and damages." (Citations Omitted; Internal Quotation Marks Omitted.)  <u>Cipollone v. Yale Indus. Products, Inc.</u>, 202 F.2d 376, 379 (1st Cir. 2000).  As in the Plaintiffs' claim for breach of warranty, there is only one real disputed element to the Plaintiffs' negligence claim.  The Defendants do not seriously contest that they have a duty to foreseeable users, that damages occurred, and that *if* they owe a duty to Jasmine to protect against her conduct, that the duty was breached.  The only real anticipated dispute comes in whether a duty was breached.  The Plaintiffs intend to prove, in much the same manner that reasonably foreseeable conduct is proven in the breach of warranty claim, that the Defendants have a duty to protect persons against trying to free lodged ice within the icemaker dispenser. The Defendants breached that duty by allowing their product to have such an unreasonably dangerous and defective condition.

C.    <u>Emotional Distress (Jasmine)</u>

In order to prove the negligent infliction of emotional distress, the Plaintiffs must prove "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." (Citations Omitted; Internal Quotation Marks Omitted.) <u>McCarthy v. Town of Hamilton</u>, 11 Mass.L.Rptr. 347, (Not Reported in N.E.2d ) (2000).

The likely most contested issues here will be proof of underlying negligence and that the emotional damage Jasmine suffers rises to the legal definition of emotional distress; that is, beyond mere upset, dismay, or grief and anger.  The Plaintiffs will seek to prove negligence, as discussed <u>supra</u>, and also prove emotional distress, by way of expert testimony and other means.

−8−

D.    Emotional Distress (Mr. DosSantos)

Lourenco DosSantos also alleges emotional distress.  Briefly, "only a bystander who is closely related to a third person directly injured by a defendants' tortious conduct, and suffers emotional injuries as the result of witnessing the accident or coming upon the third person soon after the accident, states a claim for relief that may be granted." Migliori v. Airborne Freight Co., 426 Mass. 629, 690 N.E.2d 413 (1998).

The Plaintiffs intend to prove that Lourenco came upon the accident as rescue crews were working on freeing his daughter; that he saw and was able to hear his daughter screaming in pain and fear from her injuries, and that such actions easily rise to the level of bystander emotional distress set forth in Massachusetts law.  The likely contested issues will involve proof of underlying negligence or breach of warranty.

E.    Evidentiary Ruling—Subsequent Accidents and Injuries

One portion of evidence likely critical to the trial concerns an almost identical injury involving a Whirlpool refrigerator in Ohio.  A young boy, August Slife, injured his hand in a refrigerator with an icemaker by inserting his hand in the dispenser in a similar manner as Jasmine Bunton.  August injured his hand in the icemaker when the blades rotated.  The blades lacerated one of his fingers to the bone.  It is anticipated that August's parents will testify about this incident and about their communications with Whirlpool personnel, who told them that no such similar accident had ever occurred and that their son's accident was unique and unforeseeable.  The Plaintiffs will introduce this evidence to show the hazardous nature and characteristics of the product that lacerated Jasmine Burton's hand, tending to prove or disprove that it is foreseeable that a child would use the icemaker in the manner described.  Furthermore,

the evidence tends to prove or disprove that the Defendant should be charged with constructive

knowledge of the foreseeability of such an occurrence. Finally, this evidence rebuts Whirlpool's

claim that Jasmine's injury resulted from misuse of the unplumbed icemaker, as the icemaker in

which August Slife was injured was fully plumbed.

"Evidence of recent behavior of machinery under similar circumstances may be admitted

in the sound discretion of the judge." (Internal Quotation Marks Omitted.) Simmons v.

Monarch, 413 Mass. 205, 214, 596 N.E.2d 318 (1992).   In addition, evidence of prior and

subsequent accidents may be introduced to show a product is dangerous. Klatz v. Armor

Elevator Co., 462 N.Y.S. 2d 677, 680-81, 93 A.D. 2d 633 (1983). In Simmons, supra, a

machinist suffered a serious eye injury when a drill tap forcefully ejected from a vise. The Court

allowed the testimony from other machinists who had witnessed taps forcefully ejected from the

same vise in identical circumstances. Id.

Product liability laws, particularly regarding the failure to warn, have evolved in

Massachusetts to provide fairer standards for product manufacturers. See Vassallo v. Baxter, 428

Mass. 1, 696 N.E.2d 909 (1998). That reform, however, does not affect the ability of the plaintiff

to introduce evidence relating to the dangerous nature or characteristics of a particular product.

In Vassallo, silicone breast implants caused multiple illnesses for the plaintiff. The

Supreme Judicial Court held that the trial court did not err in allowing evidence of complaints of

occurrences that post-dated the plaintiff's illness. The court held that such subsequent

occurrences were relevant as to proving or disproving the "characteristics of the silicone gel used

in Vassallo's implants." Id., 17.

Other jurisdictions have answered this question definitively. See, e.g., Bass v. Cincinnati,

Inc., 667 N.E. 2d 646 (Ill. 1996) (prior and subsequent accidents tend to show that a product is

unreasonably dangerous); Conques v. Wal-Mart Stores, 799 So.2d. 1094 (La. App. 2001)

(defective automatic doors); see also Facci v. General Electric Co., 596 N.Y.S. 2d 928 (1993)

(prior and subsequent accidents may be proffered to show that product is unreasonably dangerous

or defective provided incidents are substantially similar).

In this case, a subsequent accident injured another child's hand in much the same manner

as Jasmine's hand was injured, using a similar model Whirlpool icemaker.  Such an occurrence is

sufficiently identical that its probative value outweighs its prejudicial effect.  F.R.E. 403.  In

addition, it tends to prove or disprove a characteristic of the icemaker—namely, its danger to

children.  Such evidence goes toward proving or disproving the foreseeability of this accident

occurring, and thus, the evidence should be admitted.

8. **Requested Amendments to Pleadings**: The Plaintiffs respectfully request that the Court

Order that the Motion to Amend its First Amended Complaint be granted to allow for the

Plaintiffs to have availability to the treble damages and attorneys fees provisions of Mass. Gen.

L. c. 93 A sections 9 and 2. Generally, a breach of Warranty constitutes a violation of GIL.

C.93A, § 2 (see: Maillet v. AFT-Davidson Co., Inc. 552 N.E.2d, 100 (Mass., 1990). A formal

and adequate 93A demand letter was served on October 2nd; plaintiffs did not amend its

complaint prior to awaiting the 30 day period and defendants made a settlement offer as a result.

Therefore, the purpose of the demand letter was satisfied. Under Massachusetts law, a motion to

amend the complaint and insert a 93A count may be granted after filing suit if those requirements

are met (see: Tarpey v. Crescent Ridge Dairy, Inc., 713 N.E. 2s 975, 983 (Mass.App.Ct, 1999)

granting such a motion over one year after suit was commenced) and see also Burns ex rel.

Office of Public Guardian v. Hale and Dorr LLP 2006 WLM 2355988 (D. Mass., 2006)

upholding <u>Tarpey v. Crescent Ridge</u>.

**9. Additional Matters to Aid in Disposition if Trial:**

Plaintiffs request that a translator be present to aid in the testimony of one of its witnesses.  The translator must be fluent in Cape Verdian.

**10. Probable Length of the Trial:**

Each party has estimated the time it will require to present its case, including opening statement, closing statement, direct testimony of the party's witnesses, and cross examination of the opposing parties' witnesses. Plaintiffs estimate that they will require 2-3 days. Defendants will require 2 days. The estimated time for trial as a whole is one week (5 days).

**11. Voir Dire Procedures**:   See attached list

**12. Witnesses to Testify at Trial:**

<u>Plaintiffs' witnesses</u>

a. Lourenco P. Dossantos, 7 Bloomfield St., Dorchester, MA.  A party to the case and Jasmine Bunton's father.

b. Jasmine D.Bunton, 7 Bloomfield Avenue, Dorchester, MA.  Plaintiff and the person that suffered serious injury in the icemaker.

c. Maria Depina, 7 Bloomfield St., Dorchester, MA.  Ms. Depina is Ms. Bunton's grandmother and was the first witness to arrive at the accident.

d. Julio Depina, 7 Bloomfield St., Dorchester, MA.  Mr. Depina is Jasmine Bunton's uncle and also arrived at the scene of the accident shortly after Jasmine was injured.

e. Manuela Gomez, 10 Humphreys St., Dorchester, MA 02125 Tel (617) 594-1332. Ms. Gomez was holding Jasmine's free hand while waiting for rescue teams to arrive.

f. Bronlette DeRosa, c/o DosSantos, 7 Bloomfield St., Dorchester, MA 02124. Tel (617) 2112 8993. Mr. DeRosa is a fact witness. He is a friend of Mr. DosSantos and was with him during the time of the accident.

g. Firefighter William G. Austin, c/o Boston Fire Department, 115 Southampton St., Boston, MA 02118 Tel (617) 343-3550. Lt. Austin was the overall scene commander for the rescue crews and his Engine Co. 21 was the first to arrive.

h. Firefighter Joseph Foley, same as above, part of initial rescue team.

i. Firefighter James McKittrick, same as above, part of initial rescue team.

j. Firefighter Stephen Nawoichicka, same as above, part of initial rescue team.

k. Firefighter Larry McLaughlin, same as above, on-site commander of unit Rescue 2, and commander of the team that disassembled the refrigerator around Jasmine's hand.

l. Dr. Mitzi Johnson, Tufts-New England Medical Center, 750 Washington St., Boston, MA 02111. Tel. (617) 636-6310. Dr. Johnson is Jasmine's primary care physician and will describe Jasmine's overall present health, the levels of distress she has suffered and related matters. She will testify as a fact witness.

m. Dr. Charles Cassidy, Tufts-New England Medical Center, same information as above. Dr. Cassidy was the treating surgeon and will, therefore, testify as a fact witness and expert. He will describe the procedures performed and the level of Jasmine's physical impairment. Dr. Cassidy will also testify as to his knowledge of the cost of these procedures and the cost of planned future procedures.

–13–

n. Dr. Frank Graf,  152 Court St., Suite 2, Portsmouth, NH, 03801-4416, Tel. (603) 436-5544.

Dr. Graf is an expert who will testify as to the extent of Jasmine's injuries, describe the surgeries

performed, what further surgeries are necessary, and the degree of permanent impairment.  Dr.

Graf will also testify as to the cost of the procedures.

o. Dr. Eric Abrams, The National Compensation Experts, 106 East 6th St., Suite 250, Austin, TX

78701, Phone No. 877-321-3266.  Dr. Abrams is an expert in the field of determining just

compensation for various injuries.

p. Matthew Slife and Margaret Slife, P.O. Box 8, 207 North Jefferson, New Bremen, OH, 45869,

Phone No.: 419-733-0847.  Matthew and Margaret Slife will testify with regard to the injuries

sustained by their son.

13. List of Proposed Exhibits:  See attached list and objections.

14. Proposed Preliminary Jury Instructions:  See attached list.

Respectfully submitted
Attorney for the Plaintiff,


Glenn Haese (BBO No. 662939)
Haese, LLC
85 Devonshire Street, 6th Floor
Boston, MA 02109
(617) 428-0266
ghaese@haese.com

and


Andy Penry, Esq. (Admitted Pro Hac Vice)
Taylor, Penry, Rash & Riemann, PLLC
510 Glenwood Avenue
Suite 319
Raleigh, NC 27603


## CERTIFICATE OF SERVICE

I, Glenn H. Haese, certify that on October 10, 2006, a true copy of this pleading was sent

by first-class mail, postage prepaid to Christopher B. Parkerson, Campbell, Campbell, Edwards

& Conroy, One Constitution Plaza, Boston, MA 02129.


Glenn H. Haese (BBO No. 626939)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASMINE D. BUNTON, BY HER LEGAL ) <br> GUARDIAN, LOURENCO P. ) <br> DOSSANTOS, and LOURENCO P. ) <br> DOSSANTOS, ) <br> ) <br>     PLAINTIFFS, ) <br> ) <br> ) <br>     v. ) <br> ) <br> SEARS ROEBUCK AND CO. et al., ) <br> ) <br>     DEFENDANTS. ) <br> ) | CIVIL ACTION NO.: 04-CV-12369-NG |

## PLAINTIFFS JASMINE D. BUNTON AND LOURENCO P. DOSSANTOS PROPOSED JURY INSTRUCTIONS

*Pursuant to Fed. R. Civ. P. 51, Plaintiffs submit the following proposed instructions to the jury.*

In this case, the Plaintiffs contend that the Defendants Whirlpool Corporation and Sears, Roebuck are responsible for Jasmine's injuries because Whirlpool was negligent in designing the refrigerator / ice maker in which the Plaintiff's hand was injured. The Plaintiffs contend that Sears, Roebuck as a vendor of the machine is responsible for Whirlpool's negligence.

They further contend that both Defendants breached the so called "Warranty of Merchantability" in marketing the product.

In other words, the Plaintiffs proceed under two different and independent theories of law, the first being negligence, the second being breach of warranty. Both theories are similar in many elements, but there are some important distinctions. The main difference is that the tort of

1

negligence primarily looks at the tortfeasor's (manufacturer's) conduct. He is liable if his conduct falls short of what could have reasonably been expected of a reasonable person in a like situation. Breach of Warranty, on the other hand, does not so much look at the conduct of the tortfeasor (manufacturer), but at his product. If the product is found unfit for its purpose and dangerous, the manufacturer is liable even if it did everything right during the design and manufacturing process. It is basically a theory of strict liability.

Finally, both Plaintiffs claim that they have suffered emotional distress as a result of the accident. I will address this third cause of action as well.

## I. Negligence

Negligence in general means that someone did not exercise the degree of care that a reasonable person would have exercised in the circumstances. The focus of the negligence inquiry is on the conduct of the defendant. Liability is imposed when a product's manufacturer or seller has failed to use reasonable care to eliminate foreseeable dangers which subject a user to an unreasonable risk of harm.

Since this is a product liability case, you are asked to decide whether the Defendant Whirlpool exercised that degree of care which an ordinary, reasonably prudent manufacturer of refrigerators/ice makers would have exercised in like circumstances. To be more specific, since the safety of the design is in issue, the question is, did Defendant Whirlpool in its design process of the ice maker apply the required degree of care that a reasonably prudent designer of ice makers and refrigerators owes to its consumers.

2

Negligence can be further broken down into four essential elements. In order to recover under a theory of negligence, the Plaintiffs must prove by so called preponderance of evidence each of these elements:

1. That the Defendants owed a so called duty to the plaintiff – I will explain what this means below.

2. That Defendants breached this duty:

3. That the plaintiff has suffered injury or damages; and

4. Finally, that Defendant's breach of its duty was a cause of the plaintiff's injury or damage.

If you find that the Plaintiff has proven these elements by a "preponderance of evidence", the Defendants are liable. Preponderance of the evidence means that you believe that the evidence that the Plaintiff has introduced makes the claim appear more likely to be true than not to be true. I will now explain the four elements of negligence to you in detail:

**1. Duties of the Manufacturer and Breach of Such Duty**

The Plaintiffs allege here that the product suffers from a "design defect" and from a "warning defect". I will explain both to you.

3

**a) Design Defect - Duty**

Let us first look at what "design defect" means. Any manufacturer of products has a duty to foreseeable users of the product to design its products with reasonable care. This means that dangers that could be avoided and unreasonable dangers of the product must be eliminated by the design. In order to do so, the manufacturer must anticipate the environment in which the product will be used and must design against reasonably foreseeable risks attending that product's use in that setting. In other words, the designer/manufacturer must ask itself: "What kind of people will come in contact with our product, where will it be situated, and how will it be used."

To apply the above to the facts of the case, you will have to ask yourselves:

1. Are children foreseeable users of refrigerators with integrated ice makers?

2. Is a family's home kitchen an environment in which the product will likely be used?

If you reach this conclusion in your considerations, a duty existed towards the Plaintiffs.

**b. Breach of Duty**

If you come to the conclusion that a legal duty towards the Plaintiff Jasmine existed, you will now have to decide whether this duty was breached by the Defendant Whirlpool. The duty was breached if you come to the conclusion that the product was not reasonably safe, i.e. it was defective in design because the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design and that the omission of

4

that alternative design (or design changes) rendered the product not reasonably safe. In plain English, the product could have been made safer, but was not.

However, you should bear in mind in your deliberations that it is the duty of the manufacturer to design a product that is <u>reasonably safe</u>. There is no obligation to design safety devices that protect against dangers that are highly speculative or extremely unlikely to realize. A product that is absolutely risk free, as against proof even against the most remotely possible dangers, does not have to be designed. However, the manufacturer must anticipate the environment in which the product will be used, as discussed above. You will have to decide if the danger of a child having its hand cut in the ice maker – which occurred in this case – could or should have been foreseen by the manufacturer or if this danger was such a remote and extremely unlikely situation that the manufacturer was under no duty to include any safety precautions against such dangers.

In order to determine whether the product was reasonably safe for that environment, there are several factors that you should consider:

a. The gravity of the danger originating from the product;

b. the likelihood that such danger (here the accident involving Plaintiff) would happen

c. could the manufacturer have developed a design that is safer <u>without</u> making the product prohibitively expensive or would have rendered the product less useful to the consumer;

Also, you may consider the factor if the danger origination from the ice maker was something obvious.  In other words, ask yourselves if a refrigerator / ice maker is a machine that the

reasonable consumer normally anticipates to be a dangerous item, such as a garbage disposal unit, a blender, or a chipper.

### c) Warning Defect – Duty

The Plaintiffs also believe that in addition to the product being defectively designed from a mechanical point of view, it also suffered from an additional defect that is commonly called "failure to give adequate warning" (of a danger not obvious), or a short "warning defect".

Let me explain what that means. A manufacturer in addition to making its products as safe as possible also has a duty to the consumer to give adequate warnings and instructions regarding the nature and extent of the dangers which might arise out of the use of the product about which the designer knows or should have known. I am sure you will have seen warning stickers on ladders, light bulbs, sharp objects and electrical equipment and now you know the reason for those warnings being in place.

It is important to stress that the designer of a product also has a duty to warn against dangers that are associated with behavior that would qualify as an <u>unintended use</u> of the product or that would even <u>qualify as a misuse</u> - if such misuse was reasonably foreseeable to the designer. However, there is no duty to warn against dangers that are completely unassociated with a foreseeable use or foreseeable misuse of the product. In other words, for injuries arising out of the use or misuse of the product that the designer could not possibly have foreseen when the product was designed, the manufacturer is not liable. To give you an example: a chair is intended for people to sit on. However, it is very foreseeable that people will use or if you will, misuse, a chair in order to step

on it, say to change a light bulb or to put up a painting on the wall. However, if someone uses a chair in lieu of a car jack in order to elevate a car and injures himself because the chair breaks under the weight of the car, the manufacturer of the chair would not be liable as such misuse is not foreseeable. Also, there is no duty to warn against dangers that are obvious in nature and commonly known or against dangers that are obvious and unconcealed.

Let us apply the above to the facts of the present case. If you find that the possibility that a child would come in contact with the ice maker and would try to free up an ice blockage with her fingers is a situation that the manufacturer could or should have reasonably foreseen, and/or if you find that the Defendants did not give a warning (i.e. by putting a prominent warning sticker on the machine or at least into the Product Operations) that is appropriate when the dangers of the ice maker are considered, then you will find that they acted negligently. However, if you find that the chances that such a situation would occur (a child uses a refrigerator / ice maker, an ice blockage occurs and then attempt to free up the ice dam with its fingers) is an absolutely unlikely and completely unforeseeable situation, then no duty to place a warning sticker or any other warning instructions existed on the side of the Defendants and Defendants are not liable under the legal precept of failure to warn.

## 2. The Damages that Plaintiff Claims to have Suffered Must Have Been Caused by the Breach of the Defendants' Duty Towards the Plaintiff.

If you come to the conclusion that a duty existed towards the Plaintiff, and if you further believe their behavior fell short of what could have reasonably been expected from them (which is what breach of duty really means), then Defendants have acted negligently.

However, your deliberations must not stop there. You must then consider whether the Defendant's conduct (the bad design and/or the failure to warn against the danger of having one's hand cut) caused or enhanced the Plaintiff's injuries that she claims to have suffered. Plaintiffs only have to show that it is more likely that the Defendants were responsible for the harm complained of by Plaintiffs, than it is that Plaintiffs injuries were sustained due to the action of any unrelated party. You may rely on any evidence introduced, including the medical testimony and documentations by the hospitals and doctors' offices.

If you think so, Defendants are liable for the damages and injuries that plaintiff suffered under the theory of Negligence.

## 3. Negligence on the side of Sears, Roebuck

You may have already asked yourselves why a retailer – a vendor that was not involved in the design process of the refrigerator – should be liable for negligent conduct in the design process of the ice maker. However, under the laws of the Commonwealth of Massachusetts and of almost any other state, any retailer who labels a product manufactured by others as its own is liable for the negligence of the actual manufacturer. In other words, if you find that "Kenmore" – which is the label the Refrigerator is sold under – was a Sears, Roebuck brand, then for the purpose of your consideration, Defendant Sears, Roebuck is responsible just as Whirlpool Corporation. Should you reach this conclusion, I instruct you to hold Sears, Roebuck liable to the very same extent as the manufacturer under a theory of Negligence.

## II. The second theory is "Breach of Warranty" against both Whirlpool Corporation and Sears, Roebuck

Jasmine also seeks to recover under a theory called "breach of warranty." When any goods are sold, the laws of the Commonwealth of Massachusetts (and that of most other states) implies a so called a warranty – basically a promise - to the buyer by the manufacturer that the sold goods are fit for the ordinary purpose for which they are used. Implied means that this promise (warranty) arises by operation of law which means that an actual promise, statement or representation by the manufacturer or retailer is not necessary.

An important distinction exists regarding liability under a theory of Negligence (see above) and liability under a Breach of Warranty. Liability under a Breach of Warranty theory does not look at the manufacturer and its conduct while designing the product. Moreover, liability theory under a Breach of Warranty claim looks at the result of the design process and asks: Is this product reasonably safe. In other words, even if the manufacturer has done everything right in designing the product (i.e. used competent engineers, good designers etc) and the end product is still dangerous to no fault of the manufacturer, he is still liable under breach of warranty for fitness of its ordinary purpose. It is basically a concept of strict liability for introducing a product into the stream of commerce that is not safe enough.

Further, it is important to stress that this warranty entails not only a promise that the product is safe and fit for its intended uses but that it goes much further than that. It also entails uses that are unintended uses of the product, even misuses, so long as those misuses of the product were reasonably foreseeable for the manufacturer. Let me refer again to the example of the chair

9

whose intended use is to have people sit on. Yet the fact that people will use the chair to stand on

and try to fix a light bulb, though not the real intended use and possibly even a misuse of the

chair, is something that the manufacturer must reasonably foresee and, therefore, must make the

chair sturdy enough for people to stand on. If a product is in a defective condition and thus

unreasonably dangerous, then it is not fit for the product's ordinary purpose and the merchant has

breached the implied warranty (promise) to the customer.


## 1. The four elements of "Breach of Warranty"


Just as the tort of Negligence can be broken down to a few essential counts, "Breach of

Warranty" liability can be reduced to four essential elements that I will explain to you in the

following. As with negligence, the Plaintiff will have to prove by a "preponderance of evidence"

that each of the four elements are given. If you believe that the Plaintiffs have done that, then the

Defendants are liable.  The four essential elements are as follows:


a. The plaintiff must prove that the Defendant (Whirlpool) has manufactured the product. This

has been conceded by the Defendants and you may take this point as proven.


b. Second, the Plaintiff has to have proven to you that at the time of the injury, he or she was a

person whom the manufacturer might reasonably have expected to use, consume or to be affected

by the product in a manner that could have been foreseen by the manufacturer. To apply this to

our case, you will have to consider if an eight year old child reasonably could have been expected

to be in contact with a refrigerator in a kitchen of her house – your considerations will be very


10

similar to the ones you will have to make with regard to the liability for possible negligence (see above).

c. The Plaintiff has to have convinced you by a preponderance of the evidence that a condition existed that made the product of the Defendants unreasonably dangerous as a result of the product's design. As with Negligence, we will call this condition a "design defect." But more than that, Plaintiffs have to have convinced you that this defect already existed at the time when it "left the hands" of the manufacturer. If, say, you come to the conclusion that the product was substantially altered by the Plaintiff, Defendants could reason that this alteration, and not their design, was the cause for the product being dangerous.

d. And finally, the Plaintiff must have proven by a preponderance of the evidence that it was the defective condition, and not anything else that has caused the Plaintiff's injuries.

## 2. Design Defect

In order for you to determine that the refrigerator/ice maker was poorly designed for its intended environment and purpose, you will have to make considerations very similar to those you will have to do in the context of Negligence (see above). You should consider whether the ice maker had any dangerous propensity that resulted from the Defendants manufacturer's conscious design choices that made the product unreasonably dangerous to its foreseeable users. Thus, it is not fit for its ordinary foreseeable purposes.

11

Should you find that the foreseeable risks of harm from the ice maker could have been reduced or even avoided by alternative design – such as suggested by the Plaintiffs' expert - then the product should be found by your to not be reasonably safe.

A manufacturer warrants (promises) by law, that the product he sold is fit for the ordinary purposes that products of such kind are foreseeably used. Please bear in mind here that the "ordinary purpose" for which the product must be fit for, includes the intended/foreseeable uses as well as the ways in which the product could be misused, as long as this is reasonably foreseeable. Let me state that a little differently: A good design takes into account that the product will be used differently as intended and even that it will misused. It has to guard against that misuse as long as the different use is reasonably foreseeable at the design process. If it does not do so, the product is defective and the manufacturer is liable.

There are several factors that will help you in considering the product's design. You should consider the gravity of the danger of the design posed to its users. The likelihood that such danger could occur; and again, if the risks that materialized here could have been reduced by an altered design. However, if you find that an alternative design (say, a longer chute, a narrower chute or a guard) was possible, you must consider if such changes, although they would have made the product safer, might have possibly rendered the product unpractical or prohibitively expensive.

## 3. Failure to give Adequate Warning

Just like it is necessary to warn against dangers of a product to avoid liability in negligence (see above), it is also necessary for manufacturers and vendors to give <u>adequate warnings</u> against risks

that are foreseeable under the aspect of breach of the implied warranty of merchantability (promise to the consumer that the product is fit for its ordinary purpose and foreseeable abuse).

It is important for you to understand that even if you come to the conclusion that the product was properly designed from an engineering point of view, it could still be unreasonably dangerous and therefore be defective, when you believe that the foreseeable risks of harm posed by the product could have been avoided or even reduced by the <u>provision of reasonable warnings or instructions</u>.

In your considerations, bear in mind that a manufacturer or vendor does not have to warn of <u>known or obvious precautions</u> to be taken when using a product of that particular kind.

In summary, if you find that the foreseeable risks of cutting one's hand in the ice maker could have been avoided or even reduced by, say the insertion of a warning sticker on the machine or a provision in the manual, then you will find that the product was defectively designed. As a result, Defendants will be liable, even if in your opinion, there is nothing mechanically wrong with their product.


## III. Negligent Infliction of Emotional Distress

As a third and final claim, both Plaintiffs (Jasmine and Lourenco) assert the tort of Negligent Infliction of Emotional Distress. It is important for you to understand that emotional distress is a separate wrong for which Defendants are independently liable for on top of other torts that you may hold them responsible for.

## 1. Plaintiff Lourenco's Claim

Lourenco, father of Jasmine, claims that he suffered severe emotional distress because he was forced to watch his 8 year old daughter helplessly trapped in the ice maker, with blades locked in her hand for over two hours. He claims that the fireman had to physically restrain him from getting near his daughter. As he was not the victim of the accident himself, he is called a "bystander".

Plaintiff Lourenco has alleged and provided evidence to the Court of negligent infliction of emotional distress.  Plaintiff Lourenco is entitled to recover on the count of the evidence introduced satisfies your that the following elements have been proven by preponderance of the evidence:

a. first, the Defendants (Whirlpool and Sears, as Sears is liable for Whirlpool) were negligent; or the Defendant manufactured or supplied a defective product; so if you come to the conclusion that the Defendants were liable under negligence as explained above, you may take this element as proven;

b. then, you must be convinced that Defendant's negligence or defective product was a cause of injury to the Plaintiff (Jasmine).  If you find that Defendants are liable under any of the first theories that I explained to you above, you may consider this element as fulfilled;

c. Plaintiff was the spouse, parent, or child, of the victim; Since it is not contested that Plaintiff Lourenco is Plaintiff Jasmine's father, this element can be taken for granted;

14

d. then, you must decide if you find that Plaintiff Lourenco witnessed the injury-producing event (the accident) or came to the accident scene while the Plaintiff Jasmine was still there;

e. next, Lourenco must have been aware that such event or accident caused the injury to the victim; in other words, did he know that the ice maker cut his daughter's hand?

f. and finally, you will have to be convinced that Plaintiff Lourenco has suffered serious emotional distress, in other words, emotional injuries as the result of witnessing the accident or coming upon the Plaintiff Jasmine soon after the accident. Serious emotional distress is an emotional reaction stronger than that which would be anticipated in a witness not related to the injured person – in other words, Lourenco's distress must have been stronger than that of a person not closely attached to Jasmine (say, the distress of an acquaintance or of a fireman).

g. Further, Plaintiff Lourenco's emotional distress must not have been an "abnormal response" to the circumstances, in plain English, not an extremely exaggerated, i.e. hysterical response.

If you find that Plaintiff Lourenco has proven his case by a preponderance of the evidence, then both Defendants are additionally liable under Negligent Infliction of Emotional Distress.

## 2. Plaintiff Jasmine's Claim

Plaintiff Jasmine has submitted evidence to support her own count for Negligent Infliction of Emotional Distress and has submitted evidence that, as a result thereof, that her hand was trapped in the cutting tools of the ice maker for close to three hours and that she suffered emotional distress as a result. She must demonstrate the following in order to recover under this additional tort:

a. Negligence on the side of the Defendants – in other words, just as above, you must find that the Defendants are principally liable for the potentially bad design of the refrigerator under a theory of negligence.

b. Further, you must find that Plaintiff Jasmine suffered emotional distress as a result of her injuries. Emotional distress here means any kind of mental suffering or mental anguish. It includes all highly unpleasant mental reactions, such as fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation and indignity, as well as physical pain. If you believe Plaintiff Jasmine suffered these feelings and reactions, as a result of being trapped in the ice maker for three hours, you may take this element for granted.

c. Causation; you must find that the distress was the result of Plaintiff Jasmine's accident.

d. Further, you will have to determine if Plaintiff Jasmine suffered physical harm manifested by objective symptology.

e. And lastly, that a reasonable person would have suffered distress under the same circumstances.

If you believe Plaintiff Jasmine's evidence (let me again remind you of the preponderance of evidence standard that only means that her evidence is more believable than not believable), Defendants are both liable also for this separate tort of Negligent Infliction of Emotional Distress.

16

## IV. Damages

### Introduction to Damages

As I have mentioned, the fourth element that the plaintiffs will have proved if you find in their favor is that they have suffered damages. You will reach this point in your deliberations only if you already have already concluded that defendants are liable. As with all other elements, the plaintiffs have to prove their damages by a preponderance of evidence.

The purpose of the law for awarding damages is primarily to compensate the injured person for losses incurred because of the other person's unlawful conduct. One could say that the object of the law of damages is to attempt to put the injured person back to the position he or she would have been had the wrong not happened. It is primarily not to punish the defendants or to somehow reward the plaintiffs. In short, damages are to be awarded as a fair and reasonable compensation for the wrong that he or she suffered.

In your deliberations, please try to put aside your personal feelings as much as possible and decide this case based on the evidence that you have seen and heard and on the law as I have explained.

There is no special formula to assess the plaintiff's damages. It is upon you to decide what is fair. Use your own wisdom and judgment and your sense of basic justice in order to translate into dollars the amount that you believe will compensate the plaintiffs for the injuries that she suffered. Be guided by your common sense and your clean conscience.

17

In determining the amount of damages which the plaintiffs are entitled to recover, there are certain areas that you will consider.

## 1. Damages for the Pain and Suffering that plaintiffs have sustained

The first of those areas is Pain and Suffering. Pain and suffering can be physical as well as mental. Arguably the most important part of pain and suffering is the question to what extend the plaintiffs Jasmine and Lourenco will be permanently impaired as a result of her injury for which the defendants are responsible.

a) For the physical portion of those damages, you will consider the areas of the body where the plaintiff was injured – here Jasmine's hand and her left ankle as a result of the nerve grafting. Take into account how much pain and suffering Jasmine experienced in the past (that is, starting when the cutting tools began to cut into her hand), and the pain and suffering she experienced during the extraction of her hand by the rescue team. Also, consider the repeated surgeries that she had to suffer through and any pain and discomfort that she had while going through rehab afterwards. If you find that she still has pain in her hand, please include this fact into your computation.

b) Further, mental pain and suffering of the plaintiffs must be included. Nervous reactions, shocks, anxiety and angst that result from the accident will be important for your deliberations. Here, 8 year old Plaintiff Jasmine was trapped in the ice maker for about two hours; her family was unable to help her and even the firemen were at first unable to free her hand. A special rescue unit had to be called, further prolonging the period of mental anxiety and angst. You may include the fear of an 8 year old girl that is afraid of losing her hand in a cutting tool into your damages considerations.

18

Furthermore, take into account past, present and possibly future <u>mental</u> suffering. Jasmine tells us that she is now the subject of mockery among her peers because of her disfiguring scaring on her leg and her hand. She also tells us that she now wears long boots to hide the scaring from her school mates and that as a result, she cannot play soccer any more. These factors you may also take into account when you come up with an actual dollar figure.

In summary, try to determine what would be a fair and reasonable figure to compensate Jasmine for the above; consider the amount that the injury takes away pleasures that she otherwise could enjoy (such as running, playing ball games and playing soccer) and bear in mind that Jasmine is entitled to a full compensation for any reduction in the enjoyment of life that has resulted or probably resulted from the accident.

c) A very important aspect of pain and suffering is whether or not the plaintiff is permanently disfigured or physically or mentally impaired as a result of the defendants' wrong. Here, Jasmine claims that her hand will never be the same and that she will never regain full and normal use of it. This is certainly a very grave and important point that you should give sufficient weight in your deliberations. Further, the permanency of the scars on her hand and on her leg are elements that you should consider when you determine which amount will be fair and reasonable to compensate Jasmine.

Let me repeat that, to arrive at a monetary figure for the pain and suffering that Jasmine suffered, including all of the above, you are to rely on your own good sense, background, experience. Use all of those in order to come up with a figure that you believe will fairly compensate Jasmine for what she has been through.

## 2. Medical Expenses

Medical, hospital and nursing expenses incurred by Jasmine as a result of the injury she suffered are also to be included in the damages to be awarded.

Jasmine is entitled for those medical expenses which were reasonably necessary. As a result, you will have to decide two things: (1) was the expense (say the hospital bill) related to the injury, and (2), was the charge in itself reasonable.

Also, you may consider and allow the plaintiff a reasonable sum for future damages as a result of the accident.

In your determination, please bear in mind that the plaintiff has been hurt and is entitled to recover for whatever expenses are reasonably required to diagnose and treat any condition that results from the accident in the ice maker and any and all resulting injuries. Costs of cure, alleviation of suffering or limitation of suffering, also any kind of rehab training (physical therapy) are to be included in your computation.

## 3. Loss of Earning Capacity

The third area of damages that you will consider is the "loss of earning capacity".

Each and any of us, whether we are employed, retired or have never worked in our lives, has the capacity to earn money. This capacity is called earning capacity. This ability to make money varies from individual to individual and depends on several factors. Such factors are for instance the evidence of earnings before and after the accident, the learned occupation if the individual, experience, skills, intelligence and education.

If one of us gets hurt to our ability to exercise this ability for some time and therefore the earning capacity is affected, then that is an element of damage that you should consider. Even if no actual wages are lost, say because someone was not employed or was covered by an insurance, this person may nevertheless recover damages because her earning capacity was impaired.

Here, we are considering the case of a girl that is now 10 years old. She claims that she is permanently impaired as a result of the accident for which the defendants are responsible. It is the diminution in earning capacity of the plaintiff that is important and not actual earnings of which there are naturally none. Therefore, you will have to estimate with regard to how much Jasmine's earning capacity is now reduced because of her impairment. You may take into account her schooling and training and her potential to graduate from college or to go to graduate school. If the plaintiff had the ability to earn money (by learning certain professions, i.e. surgeon, watch maker, jeweler or alike) and if you find that this ability is now reduced or even impossible, then this is something you will have to consider in your damages calculations. You may not take into account things that are merely speculative or imaginative. Your award must be based on reasonable probability and you may use your collective common knowledge.

### 4. Summary

Once you have completed your calculations for each of the above areas of damages (that is, pain and suffering, past medical expenses, estimated future medical expenses, and the diminution of earning capacity) you should then add up each of these damages and arrive at a total award. There must be no overlapping of the various elements that make up the damages. The total sum must be a fair compensation for the entire injury, not for parts of it, and not for more.

Respectfully submitted
Attorney for the Plaintiff,


Glenn Haese (BBO No. 662939)
Haese, LLC
85 Devonshire Street, 6th Floor
Boston, MA 02109
(617) 428-0266
ghaese@haese.com

and


Andy Penry, Esq. (Admitted Pro Hac Vice)
Taylor, Penry, Rash & Riemann, PLLC
510 Glenwood Avenue
Suite 319
Raleigh, NC 27603


## CERTIFICATE OF SERVICE

I, Glenn H. Haese, certify that on October 10, 2006, a true copy of this pleading was sent

by first class mail, postage prepaid to Christopher Parkerson, Campbell, Campbell, Edwards, &

Conroy, One Constitution Plaza, Boston, MA 02129.


Glenn H. Haese (BBO No. 662939)


22

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASMINE D. BUNTON, BY HER LEGAL ) <br> GUARDIAN, LOURENCO P. ) <br> DOSSANTOS, and LOURENCO P. ) <br> DOSSANTOS, ) <br> ) <br>     PLAINTIFFS, ) <br> ) <br> v. ) <br> ) <br> ) <br> SEARS ROEBUCK AND CO. et al., ) <br> ) <br>     DEFENDANTS. ) <br> ) | C.A. NO.: 04-CV-12369-NG |

## PLAINTIFFS JASMINE BUNTON AND LOURENCO P. DOSSANTOS
## PROPOSED VOIR DIRE QUESTIONS

Comes now the Plaintiffs, who agree that Defendants' proposed voir dire questions 1-5 and 7-15 be asked and respectfully request the following additional voir dire questions in addition to the standard questions and Defendants' questions:

1. Do any of the jurors know one another?

2. Does any juror have engineering training or experience?

3. Does any juror have training or experience in the maintenance or repair of kitchen appliances?

4. Does any juror have medical training or experience?

5. Does any juror have legal training or experience?

6. Has any juror worked as a claims examiner or in any capacity where his or her employment required review of claims for compensation by injured people?

## BRIEF STATEMENTS OF FACTS TO BE READ TO THE VENIRE

The Plaintiffs request recitation of facts of the accident in this case:

The facts are simple and largely uncontested. On April 16, 3004, Jasmine Bunton was in her home at 78 Sumner St., Dorchester. She was eight years old. She went to the kitchen in her home to gather ice from an icemaker. The dispenser to the icemaker was located in the door of a Whirlpool model refrigerator, sold at a Sears Store, with a common and well-known design.

When no ice dispensed from the icemaker, she attempted to make ice come from the dispenser by sliding her hand up the dispensing end. In the process of doing so, Jasmine's arm depressed the activation lever, normally depressed by a glass, and activated the icemaker. Since the icemaker was in a mode for dispensing crushed ice, blades normally used for crushing ice activated and engaged, slicing into and embedding into Jasmine's hand. Jasmine managed to stop the unit and summon help from family members in the house, who alerted emergency services of the situation. Jasmine was unable to extract her hand and remained stuck in the icemaker.

The first crew to arrive at the scene, a fire engine company, was unable to extract Jasmine. They summoned a rescue crew who worked to disassemble the freezer door to free Jasmine from the device. This extraction took some time (at least an hour), during which time Jasmine's father, Lourrenco DosSantos, witnessed his daughter stuck in this predicament and crying in pain. Once freed from the device, Jasmine was rushed to Boston Medical Center for treatment, including sutures and painkillers. Later, upon reporting that she had no feeling in parts of her hand, Jasmine was referred to the Tufts-

New England Medical Center, where she has, so far, undergone two separate surgeries to repair nerves and damaged or scarred skin.  At least two more surgeries are either scheduled or expected.  Jasmine's hand will never look the same nor will her hand fully regain complete sensory perception or motor function.

Respectfully submitted
Attorney for the Plaintiff,


Glenn Haese (BBO No. 662939)
Haese, LLC
85 Devonshire Street, 6th Floor
Boston, MA 02109
(617) 428-0266
ghaese@haese.com

and


Andy Penry, Esq. (Admitted Pro Hac Vice)
Taylor, Penry, Rash & Riemann, PLLC
510 Glenwood Avenue
Suite 319
Raleigh, NC 27603


## CERTIFICATE OF SERVICE

I, Glenn H. Haese, certify that on October 10, 2006, a true copy of this pleading was sent

by first-class mail, postage prepaid to Christopher B. Parkerson, Campbell, Campbell, Edwards

& Conroy, One Constitution Plaza, Boston, MA 02129.


Glenn H. Haese (BBO No. 626939)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASMINE D. BUNTON, BY HER LEGAL GUARDIAN, LOURENCO P. DOSSANTOS, and LOURENCO P. DOSSANTOS,<br><br>      PLAINTIFFS,<br><br>v.<br><br>SEARS ROEBUCK AND CO. et al.,<br><br>      DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    C.A. NO.: 04-CV-12369-NG<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S EXHIBIT LIST

| Plaintiff's Exhibit List | | Plaintiff's Exhibit List Document Description | | Trial | Designation |
|---|---|---|---|---|---|
| | | **WHIRLPOOL** | | No Objection | Objection |
| 1 | | Whirlpool – Product Approval Report – October 5, 2001 – Bates 000218 | | | |
| 2 | | Whirlpool Corrective Action Plan dated 2/20/2001 – Product Type and Model Number : In Door Ice Models – Bates 000219 | | | |
| 3 | | Whirlpool – Test Plan Agreement – Test Menu – dated 10/31/01, Project Engineering Number 5950 (In –Door-Ice), pages 1 through 9 | | | |
| 4 | | Whirlpool Corrective Action Plan – dated March 20, 2001, Product Type Models In–Door-Ice | | | |
| 5 | | Whirlpool Corrective Action Plan – dated March 20, 2001 – Effects of Non- Conformance: No Ice Dispensing – Bates 000229, pages 4 and 5 of 16 | | | |
| 6 | | Whirlpool Corrective Action Plan – dated March 20, 2001, Possible Effects of Non-Conformance: SIR is estimated as high as 30%. | | | |
| 7 | | Whirlpool Corrective Action Plan – dated 3/21/2001 – Possible Effects of Non-Conformance: I/M Fill Tube Froze: No Ice Production: Customer Dissatisfaction pages 8 | | | |

| | | | |
|---|---|---|---|
| | of 16, Bates 000233 | | |
| 8 | Codes -- UL/CSA – 25' SSA with Door Ice dated November 24, 1999 - Bates 000004 | | |
| 9 | Whirlpool Product Development Center File SA623 – T43-1 to 14, Issued: 6-15-92 – New: 4-5-00, Method: The ice maker and ice maker dispenser were probed with an Articulated Webbed Probe with a force of 2.5lbs. – Bates 000-235-000248 | | |
| 10 | NAR – Product Safety * Audit – for October 22, 1999 and Production Release Safety Audit of March 3, 2000, Noting Laceration Hazards, in the Event of Foreseeable Conduct, regarding Operating Incidental Contact and Maintenance, Bates 000249-000273 | | |
| | **BOSTON MEDICAL CENTER** | | |
| 12 | Medical Bills from Boston Medical Center including Affidavits 4/16/2004 – Present | | |
| 13 | Certification of true and complete copy of medical records of Jasmine Bunton dated 3/27/2005 | | |
| 14 | Letter from opposing party re: Medical Records (2 pages) | | |
| 15 | Authorization to use or disclose Protected Health Information 2/11/2005 | | |
| 16 | Boston Medical Department Treatment &Admission Record describing  circumstances of accident and treatment 4/16/2004 | | |
| 17 | Emergency Department Charge Ticket | | |
| 18 | Emergency Room Nursing Documentation stating that Jasmine "cannot move her thumb" and other treatment information | | |
| 19 | Discharge planning sheet 4/17/2004 | | |
| 20 | City of Boston Emergency Medical Services (Dispatch Operations) Ambulance Report Incident No. 041070260 | | |

| | | | | |
|---|---|---|---|---|
| 21 | | Drawing of blade | | |
| 22 | | Plastic Surgery Consult Form | | |
| 23 | | Boston Medical Consent Form | | |
| 24 | | Radiology Report 4/16/2004 | | |
| 25 | | Report of Pediatric Surgical Clinic | | |
| | | **NEW ENGLAND MEDICAL CENTER RECORDS** | | |
| 26 | | Medical Bills from Tufts-New England Medical Center including affidavit 4/16/2004 – Present | | |
| 27 | | Letter from New England Medical Center re: authenticity of medical records for Jasmine Bunton 3/20/2005 | | |
| 28 | | Subpoena to Keeper of Records of Tufts –New England Medical Center 3/15/2005 | | |
| 29 | | Subpoena Worksheet 3/16/2005 | | |
| 30 | | Patient Demographic Information for Jasmine Bunton, Identify Dr. Mitzi Johnson and Dr. Charles Cassidy 5/7/2004 | | |
| 31 | | Consent Form  5/7/2004 | | |
| 32 | | Patient Care Record 5/8/2004 | | |
| 33 | | Patient Care Record  5/8/2004 | | |
| 34 | | Progress Notes  5/7/2004 | | |
| 35 | | Consent to Operation  5/7/2004 | | |
| 36 | | Day Surgery Center Medical Form5/7/2004 | | |
| 37 | | Pediatric/Peri-operative Record 5/7/2004 | | |
| 38 | | Post-operative discharge instructions 5/7/04 | | |
| 39 | | Progress Record  5/7/04 | | |
| 40 | | Nursing Assessment  5/7/04 | | |
| 41 | | Pre-anesthetic Review  5/7/04 | | |
| 42 | | Peri-operative Nursing Record 5/7/04 | | |
| 43 | | Anesthesia Patient Checklist 5/7/04 | | |
| 44 | | Post-anesthetic Care  5/7/04 | | |
| 45 | | Post-anesthetic Care Unit Progress Notes 5/7/04 | | |
| 46 | | Procedure Book, Form and Pre-operative checklist  4/28/04 | | |
| 47 | | Physician's orders  5/7/04 | | |
| 48 | | Medication records 5/7/04 thru | | |

| | 5/13/04 | | |
|---|---|---|---|
| 49 | Stat Medical and Non-recurring Drugs  No date | | |
| 50 | Pediatric Out-patient/observation Record  5/7/04 | | |
| 51 | Patient Status Sheet and IV Intake (5 pages) and Pediatric Pain Assessment Worksheet  5/7/04 | | |
| 52 | Patient Status Sheet and IV Intake (5 pages) and Pediatric Pain Assessment Worksheet 5/8/04 | | |
| 53 | Operative Report of Charles Cassidy noting Nerve Laceration 5/13/04 | | |
| 54 | Notes of Office Visit, Charles Cassidy noting lack of sensation and need for splint to prevent contracture  4/28/04 | | |
| 55 | Occupational Therapy Splint Fabrication  4-28-04 | | |
| 56 | Therapy Referral  4-28-04 | | |
| 57 | Dates of Service 4-28-04 | | |
| 58 | Ambulatory sick visit note 4-26-04 | | |
| 59 | Notes of office visit, Charles Cassidy 6-7-2004 | | |
| 60 | Notes of office visit, Charles Cassidy 11-22-04 | | |
| 61 | Operative Report 10-7-04 | | |
| 62 | Consent Form 10-7-04 | | |
| 63 | Pre-procedure history & physical 10-7-04 | | |
| 64 | Consent to operation or other procedure (2 pages) 10-7-04 | | |
| 65 | Progress Record 10-7-04 | | |
| 66 | Patient Discharge Instructions 10-7-04 | | |
| 67 | Procedure Booking Form & pre-operative checklist 10-7-04 | | |
| 68 | Pre-anesthetic review and anesthetic review forms 10-7-04 | | |
| 69 | Pediatric/peri-operative record 10-7-04 | | |
| 70 | Post-operative record & nursing assessment 10-7-04 | | |
| 71 | Physician's orders 10/7/04 | | |
| 72 | Office visit notes from Charles Cassidy noting lack of thumb movement and only partial | | |

| | | | | |
|---|---|---|---|---|
| | | recovery of feeling in index & middle fingers 8-11-04 | | |
| 73 | | Notes of Charles Cassidy stating no change in sensory perception 10-22-04 | | |
| 74 | | Splint Fabrication 10-22-04 | | |
| 75 | | Therapy Referral  10-22-04 | | |
| 76 | | Report of operation by Charles Cassidy 10-9-04 | | |
| | | **Exhibits re: Deposition of Stephen G. Boughton** | | |
| 77 | | Kenmore; Side by Side Refrigerator: User & Care Guide Bates #: 000015-000040 | | |
| 78 | | Confidential Bates #: 000389 | | |
| 79 | | NAR PRODUCT SAFETY* AUDIT; Confidential  04-26-2005 Bates 000249-000273 | | |
| 80 | | NAR PRODUCT SAFETY* AUDIT; Confidential  04-26-2005 Bates #: 000274-000388 | | |
| 81 | | Transcript of the discovery deposition of Stephen G. Boughton 06-28-2005 | | |
| | | **Exhibits Related to the deposition of Frank Graf, MD** | | |
| 82 | | Report of Dr. Frank Graf, MD | | |
| 83 | | Transcript of discovery deposition of Frank Graf, MD | | |
| | | **Exhibits related to the Deposition of Marc H. Richman, Sc.D.., P.E.** | | |
| 84 | | **Report of Marc Richman:** Dossantos and Bunton v. Sears and Whirlpool Ref : 4995    07-27-2005 | | |
| 85 | | **Qualification of Marc Richman:** FACSIMILE Document; Facsimile # 1-401-751-9210  01-18-2005 | | |
| 86 | | **GE Product Manual** | | |
| 87 | | Consumer Information; Caution: "Never put fingers or any other objects into the ice crusher discharge opening" pg 12. | | |
| 88 | | Consumer Product registration; What Is Not Covered : " Warrantor Is Not Responsible For Consequential Damages" pg 32 | | |
| 89 | | Profile Side by Side Refrigerators; Owner's Manual and Installation. | | |
| 90 | | Profile Side by Side Refrigerators; Operating Instruction ; Caution: "Never put fingers or any other | | |

| | | | | |
|---|---|---|---|---|
| | | objects into the ice crusher discharge opening" pg 15 | | |
| 91 | | Owner's Manual Side-by-Side; Ice & Water Dispenser; Caution: "Never put fingers or any other objects into the ice crusher discharge opening" pg 10 | | |
| 92 | | Owner's Manual Side-by-Side; What Is Not Covered:" Incidental or consequential damage caused by possible defects with this appliance" pg 32. | | |
| 93 | | Profile Side by Side Refrigerators. 11-03 JR | | |
| 94 | | Profile Side by Side Refrigerators; Caution: "Never put fingers or any other objects into the ice crusher discharge opening" pg 13 | | |
| 94 | | Economic Damages Analysis 7-28-2005 | | |
| 95 | | Kenmore Refrigerator; SEARS repair Parts List Model Number(s): 106.53632300 (white on white) 106.53634300 (Bisque) 106.53642300 (white on white) 106.53644300 (Bisque) Bates#: 000001-000122 | | |
| 96 | | Economic Damages Analysis 7-28-05 | | |
| | | **Miscellaneous** | | |
| 97 | | Document: CIGNA Healthcare Insurance reconciling billing and showing payments to date | | |
| 98 | | Demonstrative Exhibit of Medical Expenses | | |
| 99 | | Blow ups of photographs of refrigerator, ice maker, injuries and of Plaintiff Jasmine Bunton and Diagram. | | |
| 100 | | The Subject Refrigerator Model | | |
| 101 | | Ice Box with Cutting Tools of Ice Maker | | |
| 102 | | Any and all other Exhibits necessary for the purposes of summarization, rebuttal, impeachment or by further order of the Court | | |

The Plaintiffs respectfully reserve the right to insert further exhibits if such prove necessary.

Respectfully submitted
Attorney for the Plaintiff,

Glenn Haese (BBO No. 662939)
Haese, LLC
85 Devonshire Street, 6th Floor
Boston, MA 02109
(617) 428-0266
ghaese@haese.com

and

Andy Penry, Esq. (Admitted Pro Hac Vice)
Taylor, Penry, Rash & Riemann, PLLC
510 Glenwood Avenue
Suite 319
Raleigh, NC 27603

## CERTIFICATE OF SERVICE

I, Glenn H. Haese, certify that on October 10, 2006, a true copy of this pleading

was sent by first class mail, postage prepaid to Christopher Parkerson, Campbell,

Campbell, Edwards, & Conroy, One Constitution Plaza, Boston, MA 02129.

Glenn H. Haese (BBO No. 662939)